2002-NMCA-056

46 P.3d 1276 ·

**EAGLE LAUNDRY, Plaintiff–Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant– Appellee.**

No. 21,791.

Court of Appeals of New Mexico.

April 5, 2002.

Pete V. Domenici, Jr., Dolan & Domenici, P.C., Albuquerque, NM, for Appellant.

Timothy R. Van Valen, Lisa Mann, Jennifer A. Noya, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} This appeal arises out of a district court order confirming an arbitration decision. Eagle Laundry, Inc. (Eagle) appeals from the order granting Fireman's Fund Insurance Company's (Fireman's) application

for confirmation of arbitration decision. On appeal, Eagle contends that the district court erred in (1) determining that the parties agreed to binding arbitration and confirming the arbitration award when there was no written arbitration agreement, (2) confirming the arbitration award without holding an evidentiary hearing on issues Eagle claims would have supported vacating or modifying the award, and (3) not allowing the issue of whether the parties agreed to binding arbitration to be submitted to a jury for trial.

{2} We hold that New Mexico recognizes common law arbitration, which does not require a written agreement, and that Eagle waived whatever issues it had regarding a written agreement by participation in the arbitration without objection. Eagle also waived any issues about vacating or modifying the award by not objecting to the district court's failure to take evidence on the matters. We further hold that a jury trial is not available in proceedings on motions to confirm arbitration awards. We therefore affirm.

*FACTS and PROCEDURAL BACKGROUND*

{3} In June 1992, Eagle made a claim to Fireman's for insurance coverage for property damage caused by leakage from underground gasoline storage tanks. Eagle claimed that the damage was caused by "vandalism" and, therefore, covered under its policy with Fireman's. Fireman's investigated the claim and concluded that the damage was not caused by vandalism, so Fireman's denied the claim.

{4} In early 1993, Eagle proposed to Fireman's that the dispute be resolved by arbitration, with former District Court Judge Louis DePauli acting as arbitrator. A letter from Fireman's to Eagle indicated that if the arbitrator found in favor of Eagle that Fireman's would "pay all costs." Judge DePauli held a pre-arbitration conference with the parties. Judge DePauli and a Fireman's representative later testified that the parties agreed at this meeting that the arbitration would be binding. The day after the meeting, Fireman's confirmed this understanding by sending a letter to Judge DePauli, with a copy to Eagle's attorney. The letter also confirmed that the arbitration would address the issue of coverage for Eagle's damages under the Fireman's policy.

{5} Eagle did not respond to the letter or otherwise indicate a contrary understanding about the binding nature of the arbitration. Eagle's attorney sent a letter to Fireman's discussing scheduling for the arbitration, informing Fireman's that the arbitrator had requested damages information, and inquiring whether there were "any other details which we need to cover." Several months later, Eagle's attorney again wrote to Fireman's about scheduling the arbitration. In late 1994, Eagle's attorney sent a message to Fireman's requesting a January 1995 arbitration date and stating: "Both parties want to bring the matter to a conclusion."

{6} From late 1994 until the afternoon before the arbitration took place, the parties attempted to settle the dispute. However, the parties were unable to reach an agreement, and the arbitration took place before Judge DePauli on January 20, 1995. The attorneys for and representatives of both Fireman's and Eagle attended the arbitration and participated fully in it without objection.

{7} Judge DePauli stated in an affidavit and testified at the confirmation hearing that, as was his practice for all arbitrations, at the beginning of the arbitration he asked the parties to confirm that the arbitration was binding and they did so. Judge DePauli also stated in his affidavit and testified at the hearing that if the parties had not agreed the arbitration was binding, he would not have presided over it because he believed it would have been a waste of time for himself and the participants.

{8} Eagle's attorney did not object to proceeding without a formal written arbitration agreement, and at the confirmation hearing he denied ever stating that Eagle thought the arbitration was non-binding. Eagle's president, Tom Sundaram (Sundaram), stated in an affidavit and testified at the confirmation hearing that he objected to the arbitration proceeding without a written

agreement and that he contended the arbitration would not be binding.

{9} Sundaram's testimony on this issue conflicted with the testimony of the other witnesses. Other participants, including Eagle's attorney, testified that Eagle did not object to proceeding to arbitration without a written agreement, and that Eagle did not attempt to establish that the arbitration was non-binding once the arbitration began.

{10} At the arbitration, Judge DePauli heard testimony and considered exhibits and arguments presented by both sides as to insurance coverage and damages. Eagle's attorney testified at the confirmation hearing that the issue of coverage was fully litigated at the arbitration proceedings. Judge DePauli issued a decision expressly stating that the parties had agreed that the arbitration was binding, and ruling that Eagle's claim was not covered by the Fireman's policy because it was not caused by vandalism. Eagle then filed a motion for clarification, reconsideration, or rehearing and sought leave to submit additional evidence to the arbitrator. In this motion, Eagle objected to the lack of a written arbitration agreement but did not argue that the arbitration was non-binding.

{11} Subsequently, Sundaram submitted additional arguments, which contended for the first time that the arbitration was not binding. Judge DePauli held a hearing on January 30, 1995, on the motion for reconsideration, including Eagle's objection to the lack of a written agreement to arbitrate, and on its argument that the arbitration was not binding. Judge DePauli denied Eagle's motion. The parties each paid half of the costs of arbitration.

{12} On February 22, 1995, Fireman's filed a motion to confirm the arbitration decision in district court. Eagle's answer denied that there was an agreement to arbitrate, contended that the decision was not drafted with sufficient specificity, and stated that its counsel "should have stopped [the] entire proceedings before the arbitrator without a written arbitration agreement but neglected to do so." Eagle also requested that the decision not be confirmed because it exceeded the scope of the issues presented, it did not

address the primary issue, and the arbitrator was biased.

{13} On July 28, 2000, the trial court held an evidentiary hearing at which the parties offered exhibits and presented their own testimony and that of their attorneys and the arbitrator. The parties submitted proposed findings and conclusions. The district court entered an order confirming the arbitration decision and entered findings of fact and conclusions of law denying Eagle's motion for reconsideration. This appeal followed.

*STANDARD OF REVIEW*

{14} "In reviewing the determination of a lower court affirming an arbitration award, this Court is restricted to evaluating whether substantial evidence in the record supports the district court's findings of fact and application of law...." *Medina v. Found. Reserve Ins. Co.*, 1997–NMSC–027, ¶ 12, 123 N.M. 380, 940 P.2d 1175. We view the evidence in the light most favorable to the prevailing party and indulge all reasonable inferences in support of the findings. *Id.* We apply this standard of review to the question of whether the parties agreed to arbitrate. The matters of whether New Mexico law requires a written agreement or a jury trial are questions of law that we review de novo.

*DISCUSSION*

**A. New Mexico Law Does Not Require a Written Arbitration Agreement for the Completed Arbitration Decision to be Confirmed and Enforced.**

{15} Eagle contends that the arbitration decision cannot be confirmed, that is, it is essentially void, because there was no written agreement to arbitrate. Although the Arbitration Act refers to criteria for the enforcement of written arbitration agreements in NMSA 1978, § 44–7–1 (1971), the New Mexico Supreme Court has held that adoption of statutory arbitration provisions did not abolish common law arbitration in New Mexico. *See Robinson v. Navajo Freight Lines, Inc.*, 70 N.M. 215, 223, 372 P.2d 801, 807 (1962). In *Lyman v. Kern*, 2000–NMCA–013, ¶ 13, 128 N.M. 582, 995 P.2d 504, this Court stated, "Although pref-

erably any agreement to arbitrate should be placed in writing, New Mexico continues to recognize common law arbitration. Common law applies when arbitration agreements fail to meet statutory formalities." (Citations omitted.)

{16} Even if a written agreement were required, Eagle waived its right to object to the absence of such an agreement by fully participating in the arbitration without objection. In *Design Engineering Corp. v. Jenkins*, the New Mexico Supreme Court stated that participation in arbitration proceedings is evidence of a party's prior agreement to submit to arbitration:

> He appeared before the committee and presented his side of the controversy. Had the award been in his favor he doubtless would have insisted that the plaintiff was bound by it. A party cannot be allowed thus to speculate upon the action of the arbitrators and then refuse to be bound by an adverse award. Participation in the arbitration proceedings is of itself evidence of the party's prior agreement to submit.

74 N.M. 603, 605, 396 P.2d 590, 591 (1964) (internal quotation marks and citation omitted). Similarly, this Court has recently held that, by proceeding to arbitration after the trial court entered an order compelling arbitration without any appeal of the order, the parties "forfeited their ability to challenge not only the order itself, but also the loss of the opportunity to try their case to a jury." *Lyman*, 2000–NMCA–013, ¶ 17, 128 N.M. 582, 995 P.2d 504.

**B. Substantial Evidence Supports the District Court's Finding That the Parties Agreed to Binding Arbitration.**

{17} There is more than substantial evidence to support the district court's finding that the parties agreed to binding arbitration. Without revisiting all of the facts related above, the evidence to support the district court can be summarized as follows.

{18} The record indicates that Eagle voluntarily participated in arbitration as a means of finally resolving the coverage dispute. The record indicates that Eagle was the party that suggested arbitration as a means of resolving the dispute over coverage and that Eagle picked the arbitrator. Judge DePauli and the Fireman's representative both testified that the parties agreed to binding arbitration at the pre-arbitration conference. Fireman's copied Eagle's attorney on a letter to Judge DePauli confirming this. Despite lengthy correspondence about the arbitration, there is no evidence to contradict the fact that all participants were aware that the arbitration would be binding. Judge DePauli testified that at the beginning of the arbitration the parties confirmed that the arbitration was binding. Even Eagle's own attorney believed the arbitration was binding. It appears that the only person who claimed that he believed the arbitration would not be binding was Sundaram, and he only made this claim after the arbitrator found against Eagle. The overwhelming majority of the evidence supported the district court's finding that the parties agreed to binding arbitration.

**C. No Separate Evidentiary Hearing was Required on Eagle's Other Claims.**

{19} Contrary to Eagle's contentions that it did not have an opportunity to present testimony about alleged fraud in the proceedings or alleged arbitrator misconduct, the trial transcript indicates that the court allowed the parties much latitude in the scope of the questions and answers at the confirmation hearing. The witnesses at the confirmation hearing consisted of the participants in the arbitration proceedings, including Judge DePauli. Eagle made no attempt to show that Judge DePauli was partial, prejudiced, or had engaged in misconduct.

{20} In addition, Eagle did not suggest at the confirmation hearing or in the motion for reconsideration that a separate hearing was warranted. Nor did Eagle ever alert the trial court that it wished to present evidence that would render the arbitration award not confirmable. Under the circumstances of this case, therefore, we hold that Eagle waived this argument. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial

court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987). We affirm the trial court on this issue.

### D. No Jury Trial on the Issue of Confirmation was Required.

{21} Eagle contends that it was entitled to a jury trial in district court on the issue of whether there was an agreement between the parties to binding arbitration. We are not persuaded. NMSA 1978, § 44–7–16 (1971) provides that applications to the court under the Arbitration Act shall be by motion and shall be heard in the manner and upon the notice provided by law or rule of court for the making and hearing of motions. A jury trial is not specified, and applicable case law indicates that a motion for confirmation is submitted to the court. *See, e.g., Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 625, 857 P.2d 22, 25 (1993)("In order to promote judicial economy through the use of arbitration, the finality of arbitration awards is enforced by strict limitations on court review of those awards.").

{22} New Mexico courts have repeatedly endorsed the holding of an evidentiary hearing rather than a jury trial in this situation. *See, e.g., Medina,* 1997–NMSC–027, ¶ 12, 123 N.M. 380, 940 P.2d 1175; *In re Town of Silver City,* 115 N.M. 628, 632, 857 P.2d 28, 32 (1993); *Melton v. Lyon,* 108 N.M. 420, 421, 773 P.2d 732, 733 (1989). Therefore, it is the function of the court "to conduct an evidentiary hearing and enter findings of fact and conclusions of law upon each issue raised in the application to vacate or modify the award." *Casias v. Dairyland Ins. Co.,* 1999–NMCA–046, ¶ 8, 126 N.M. 772, 975 P.2d 385 (internal quotation marks and citation omitted).

*CONCLUSION*

{23} For the reasons set forth above, we affirm the district court's order confirming the arbitration decision, and the order denying Eagle's motion for reconsideration.

{24} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.