2005-NMCA-034

110 P.3d 509

Glen **ALEXANDER** and Doris Alexander, individually, and as trustees of the Glen & Doris Alexander Revocable Trust, Plaintiffs–Appellants,

v.

**CALTON & ASSOCIATES, INC.,** Stephen Blake Murchison, and Southwest Securities, Inc., Defendants–Appellees.

No. 23,398.

Court of Appeals of New Mexico.

Feb. 8, 2005.

Clinton W. Marrs, Vogel, Campbell & Blueher, P.C., Albuquerque, New Mexico, for Appellants.

Robert M. Strumor, Hughes & Strumor, Ltd. Co., James C. Compton, The Business Law Firm, Albuquerque, New Mexico, for Appellees.

## OPINION

ROBINSON, Judge.

{1} Appellants appeal the district court's decision ordering arbitration. Appellants simultaneously filed a complaint in district court and filed a statement of claim for arbitration against Appellees. On appeal, Appellants contend that (1) the district court order compelling arbitration must be reversed because it failed to determine the existence of a pre-dispute arbitration agreement, and (2) the mere filing of a claim for arbitration does not waive their right to challenge arbitrability. We reverse and remand.

## BACKGROUND

{2} The following is a summary of the allegations contained in the complaint of Mr. and Mrs. Alexander (Appellants). Appellants are retired and were dependant on their fixed income investment portfolio maintained with Calton & Associates (Appellees) to generate income. Between June 1995 and April 2000, the portfolio at issue was invested

in high-quality corporate and municipal bonds.

{3} Without Appellants' knowledge, Appellees opened a margin account, and from time-to-time, Stephen Murchison and Southwest Securities (Appellees) purchased bonds in the account on margin. Appellees were not authorized to use margins in Appellants' account and never subsequently obtained Appellants' agreement to the use of a margin account to purchase securities on credit.

{4} Beginning in or about April 2000, Stephen Murchison, an agent of Calton & Associates (Appellee), solicited Appellants' consent to invest a portion of their portfolio's assets in option securities. Appellants did not understand the options market and resisted the solicitation. After Appellees expressed they would not invest more than $15,000 in the options market and that they would pursue the option investment strategy for only a short time, Appellants relented.

{5} Beginning in April 2000, Appellees began to sell "put" options in Appellants' account. These options subjected their account to a risk of loss of principal far in excess of $15,000. Without Appellants' knowledge, Appellees used Appellants' corporate and municipal bonds as collateral to buy the put options in the event the option holders exercised the options.

{6} Thereafter, in or about June 2000, Appellees, without Appellants' consent, began increasing their use of margins extended by Southwest Securities to facilitate the option strategy. These additional options were written on highly volatile stocks. In January 2001, holders of these options exercised the options. The exercise of these options obligated Appellees to purchase the underlying securities in Appellants' portfolio. As the market value of these margined stocks declined further, the account became subject to calls by Southwest Securities for additional collateral to secure the margin balance. Appellants' portfolio lost almost all its value, declining from a balance over $514,000 in the summer of 2000 to approximately $75,000 by the spring of 2001.

{7} On April 23 and July 31, 2001, Appellants requested from Appellees confirmation of whether they had entered into a pre-dispute arbitration agreement. Appellees did not respond to either request. Based on the above, on July 30, 2001, Appellants filed a claim in district court against Appellees, alleging securities fraud and breach of fiduciary duty. On the same day, Appellants also filed a statement of claim for arbitration with the National Association of Securities Dealers (NASD). Appellants' simultaneous filings were to protect them from the possibility of the expiration of the statute of limitations while they attempted to determine if a pre-dispute arbitration agreement existed. On March 8, 2002, Appellees moved for an order compelling arbitration, and the district court granted that motion without determining whether a pre-dispute arbitration agreement existed. On April 18, 2002, a pre-hearing conference was held before the NASD arbitration panel, where no issues on the merits were heard, and there have been no additional arbitration hearings. Appellants still do not know whether a pre-dispute arbitration agreement exists.

## I. STANDARD OF REVIEW

{8} The appropriate standard of review for a district court's grant of a motion to compel arbitration is *de novo*. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002–NMCA–030, ¶ 51, 131 N.M. 772, 42 P.3d 1221.

## II. DISCUSSION

### A. Whether an Enforceable Agreement to Arbitrate Exists

{9} Under the New Mexico Arbitration Act, NMSA 1978, §§ 44–7A–1 to –32 (1971, as amended through 2004), the district court is compelled to order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate. § 44–7A–8(a)(2). Furthermore, "[i]f the court finds that there is no enforceable agreement, it may not ... order the parties to arbitrate." § 44–7A–8(c). *See also McMillan v. Allstate Indem. Co.*, 2004–NMSC–002, ¶ 8, 135 N.M. 17, 84 P.3d 65.

{10} In *McMillan*, two automobile insurance policyholders (insureds) challenged the

validity of a clause in Allstate's standard uninsured motorist (UM) insurance endorsement that provided for arbitration of UM claims only upon the consent of both Allstate and the insured. After Allstate disputed the extent of their respective claims, insureds each demanded arbitration. Allstate declined, choosing instead to litigate the underlying disputes in court. Insureds then brought actions against Allstate to compel arbitration.

{11} On appeal, our Supreme Court first considered whether there was an agreement to arbitrate. *Id.* ¶ 2. The Court held that "the UAA [Uniform Arbitration Act] provides no basis for concluding that the Legislature intended to compel arbitration where there was no agreement to arbitrate." *Id.* ¶ 8. The Court reasoned that "[g]iven the UAA's prohibition against compelling arbitration where there was no agreement to arbitrate, it would be inconsistent to hold that the public policy underlying the UAA requires binding arbitration of all UM claims. Where, as here, there was no agreement to arbitrate, the UAA neither compels parties to arbitrate, nor does it permit a court to grant a motion to compel arbitration." *Id.* These principles apply similarity to this case.

■ {12} In this case, the district court did not determine if an agreement to arbitrate existed, nor did Appellees produce evidence of a pre-dispute arbitration agreement. After a brief hearing, the district court ordered the parties to arbitration without determining whether a pre-dispute arbitration agreement existed. As in *McMillan,* the district court may not compel arbitration absent an arbitration agreement. 2004–NMSC–002, ¶ 8, 135 N.M. 17, 84 P.3d 65.

### B. Waiver

■ {13} Appellees contend that the existence of a pre-dispute agreement would be irrelevant because Appellants subsequently filed a claim with NASD for arbitration, thus waiving their right to object to arbitration. After considering Appellees' contentions, we are not persuaded.

{14} We read New Mexico law to require more than a claim filing to waive one's right to object or challenge arbitrability. In *Eagle Laundry v. Fireman's Fund Ins. Co.,* we first addressed the question of whether there was an agreement to arbitrate. 2002–NMCA–056, ¶ 18, 132 N.M. 276, 46 P.3d 1276. We added: "Even if a written agreement were required, Eagle waived its right to object to the absence of such an agreement by fully participating in the arbitration without objection." *Id.* ¶ 16. Furthermore, this Court held that "by proceeding to arbitration after the trial court entered an order compelling arbitration without any appeal of the order, the parties 'forfeited their ability to challenge not only the order itself, but also the loss of the opportunity to try their case to a jury.' " *Id.* (quoting *Lyman v. Kern,* 2000–NMCA–013, ¶ 17, 128 N.M. 582, 995 P.2d 504).

■ {15} Even though Section 44–7A–24(5) of the Uniform Arbitration Act deals with a hearing that has been completed on its merits, and in our case it has not, we can draw support for our holding from it. Section 44–7A–24(5) allows a party to request that a court vacate an award made in an arbitration proceeding if "there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under Section 16(c) not later than the beginning of the arbitration hearing." § 44–7A–24(5). Under this provision of the statute, a party may continue to argue that there is no agreement to arbitrate even after the arbitration is completed, so long as he preserves his objections before the hearing begins. Allowing a finding that a party has waived this argument based solely on a request for arbitration would be contrary to this provision of the Uniform Arbitration Act. We hold as a matter of law that a mere request for arbitration cannot by itself be sufficient to waive the right to contest arbitration and require proof of the existence of an arbitration agreement in court.

### CONCLUSION

{16} We reverse the district court's order and remand with instructions to the district

court to hold a hearing to determine whether an arbitration agreement exists.

{17} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and CELIA FOY CASTILLO, Judge.