2006-NMCA-117

142 P.3d 962

**K.R. SWERDFEGER CONSTRUCTION, Inc., a Colorado Corporation, Plaintiff–Appellant,**

v.

**BOARD OF REGENTS, UNIVERSITY OF NEW MEXICO, Defendant–Appellee.**

**No. 25,085.**

Court of Appeals of New Mexico.

July 28, 2006.

Certiorari Denied, No. 29,976, Sept. 11, 2006.

Bingham, Hurst, Apodaca & Wile, P.C., Michael W. Wile, Wayne E. Bingham, Albuquerque, NM, for Appellant.

Sheehan, Sheehan & Stelzner, P.A., David P. Gorman, Jaime L. Dawes, Albuquerque, NM, for Appellee.

Caren I. Friedman, Santa Fe, NM, Sparks Willson Borges Brandt & Johnson, P.C., Stephen A. Hess, Colorado Springs, CO, for Amici Curiae National Utility Contractors Association of New Mexico, Associated Builders and Contractors, Inc. (New Mexico Chapter), Associated Contractors of New Mexico, New Mexico Building Branch Chapter of the Associated General Contractors of America.

## OPINION

FRY, Judge.

{1} Plaintiff K.R. Swerdfeger Construction, Inc. (KRSC) appeals the district court's confirmation of an arbitration award. KRSC seeks to vacate a portion of the arbitration award that denied KRSC damages against the University of New Mexico (UNM), arguing that the award violates New Mexico public policy and is therefore unenforceable. Because we hold that KRSC has failed to establish a public policy basis to vacate the arbitration award, we affirm the district court.

## I. BACKGROUND

{2} In March 2001 KRSC entered into a contract with UNM under which KRSC was to construct a new water-line loop on UNM's Albuquerque campus as part of a large-scale upgrade to the campus's utility services. The project was referred to as UNM Phase I Domestic Water System Improvements. The construction of the water-line loop required excavation in areas where there were numerous underground facilities owned by UNM. The term underground facilities refers generally to cable television lines, oil and natural gas pipelines, and utility lines. *See* NMSA 1978, § 62–14–2(C), (L), (N), (O) (2001).

{3} Excavation involving underground facilities is governed by NMSA 1978, §§ 62–14–1 to –10 (1973, as amended through 2001), commonly referred to as the "One–Call Statute." Pursuant to the One–Call Statute, persons planning to engage in excavation must first notify a call-in center and give notice of the area of planned excavation. § 62–14–3(A), (C). The call-in center in turn notifies the owners and operators of underground

facilities in the area of planned excavation. § 62–14–7.1(E). The owners and operators of underground facilities in the area are then required to mark the location of their facilities on the surface before excavation begins. The statute provides:

A. Every person owning or operating an underground facility shall, upon the request of a person intending to commence an excavation and upon advance notice, locate and mark on the surface the actual horizontal location, within twelve inches by some means of location, of the underground facilities in or near the area of excavation so as to enable the person engaged in excavation work to locate the facilities in advance of and during the excavation work.

§ 62–14–5(A).

{4} The parties' dispute in this case concerned who was responsible for locating and marking the underground facilities before KRSC commenced excavation. KRSC's position was that UNM was responsible for locating and marking the underground facilities and that because of delays and additional work caused by UNM's failure to do so, KRSC was entitled to an additional compensation of $349,000. KRSC relied on Section 62–14–5(C) of the One–Call Statute, which states:

C. If the owner or operator fails to correctly mark the underground facility after being given advance notice and such failure to correctly mark the facility results in additional costs to the person doing the excavating, then the owner or operator shall reimburse the person engaging in the excavation for the reasonable costs incurred.

{5} UNM's position was that KRSC had contracted to locate and mark the underground facilities prior to beginning excavation. Pursuant to an arbitration clause in the parties' contract, the district court entered an order compelling arbitration of all the parties' claims. KRSC did not appeal the order compelling arbitration.

{6} The parties submitted to the arbitrator several issues, including whether duties under the One–Call Statute are mandatory, whether they are delegable, and whether UNM delegated those duties to KRSC. KRSC argued in part that an owner's duty under the One–Call Statute to mark its underground facilities prior to excavation was non-delegable, and that any contractual provision that purported to delegate those duties was a violation of public policy. In the arbitration award, the arbitrator made the following findings:

Although the one-call statute is mandatory, I find and conclude that an owner of underground facilities may delegate the spotting responsibilities under the circumstances presented. I find that the spotting responsibilities were effectively and unambiguously delegated to KRSC for the construction of the UNM Phase I Domestic Water System Improvements Project.

{7} KRSC then moved in the district court to set aside that portion of the arbitration award determining that UNM could delegate its duties under the One–Call Statute. KRSC again argued that the duty to mark the location of underground facilities cannot be delegated by contract, and that a contract delegating those duties is void as contrary to public policy. The district court ruled that none of the grounds for vacating an arbitration award set forth in NMSA 1978, § 44–7–12 (1971), had been met and confirmed the award. KRSC's appeal is limited to this issue. KRSC is joined on appeal by several amici curiae from the construction industry.

## II. DISCUSSION

{8} When we assigned this case to the general calendar, we directed the parties to brief whether the district court's order compelling arbitration was a final appealable order because it initially appeared that KRSC was appealing the district court's order compelling arbitration. We raised this issue on our own motion because if KRSC were appealing the order compelling arbitration and that order was a final appealable order, then the appeal would have been untimely. *See Lyman v. Kern*, 2000–NMCA–013, ¶ 9, 128 N.M. 582, 995 P.2d 504. The arguments made in the briefs, however, clarified that KRSC's appeal is from the district court's confirmation of the arbitration award, not

from the order compelling arbitration, and the appeal is therefore timely. *See* NMSA 1978, § 44–7–19(A)(3) (1971). We now proceed to address the merits of the appeal.

■ {9} As a preliminary matter, we clarify which version of the Uniform Arbitration Act applies. KRSC cites to both the 1971 version of the Uniform Arbitration Act (UAA), NMSA 1978, §§ 44–7–1 to –22 (1971), and the revised version of the Uniform Arbitration Act, NMSA 1978, §§ 44–7A–1 to –32 (2001). The contract at issue was signed on May 8, 2001, prior to the effective date of the 2001 amendments, and it is governed by the 1971 version of the UAA. We therefore confine our analysis to the 1971 Act. *See Piano v. Premier Distrib. Co.*, 2005–NMCA–018, ¶ 3, 137 N.M. 57, 107 P.3d 11 (noting that "[a]rbitration agreements made on or after July 1, 2001, are governed by the current UAA, NMSA 1978, §§ 44–7A–1 to –32 (2001)"); *Collier v. Pennington*, 2003–NMCA–064, ¶ 2, 133 N.M. 728, 69 P.3d 238 (applying 1971 version of the UAA to a contract signed in 1999).

{10} KRSC argues that the portion of the arbitration award determining that an owner/operator of underground facilities can contractually delegate its duty to mark the facilities' location in advance of excavation violates New Mexico public policy and must be vacated. KRSC claims that this public policy derives from the One–Call Statute itself, which does not expressly or impliedly permit delegation.

■ {11} The broad question of whether there is a mechanism that would permit a court to vacate an arbitration award on the basis that it violates public policy is an issue of first impression in New Mexico. KRSC raises two arguments that judicial review of arbitration awards for violations of public policy is permissible. KRSC first argues that Section 44–7–12(A)(3) of the UAA, which requires the district court to vacate an arbitration award where the arbitrators "exceeded their powers," applies when an arbitration award violates a clear public policy. In the alternative, KRSC argues that we should recognize a judicially created basis to vacate an arbitration award that violates public policy in addition to the statutory grounds for

vacatur of arbitration awards contained in the UAA. We address each argument in turn.

## A. The Arbitrator Did Not Exceed His Powers

{12} KRSC argues that arbitrators "exceeded their powers" within the meaning of Section 44–7–12(A)(3), when an arbitration award contravenes a clear public policy, and thus, the district court was required to vacate the arbitration award. We disagree.

■ {13} Under the UAA, there are strict limitations on judicial review of arbitration awards. *In re Arbitration Between Town of Silver City & Silver City Police Officers Ass'n.*, 115 N.M. 628, 631, 857 P.2d 28, 31 (1993) ("The grounds for vacating an arbitration award are limited by statute."); *Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 625, 857 P.2d 22, 25 (1993) ("In order to promote judicial economy through the use of arbitration, the finality of arbitration awards is enforced by strict limitations on court review of those awards."). The UAA provides that the district court shall vacate an arbitration award on application of a party when:

(1) the award was procured by corruption, fraud or other undue means;

(2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) the arbitrators exceeded their powers;

(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5 [44–7–5 NMSA 1978], as to prejudice substantially the rights of a party; or

(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 [44–7–2 NMSA 1978] and the party did not participate in the arbitration hearing without raising the objection. The fact that the relief was such that it could not or would not be granted by a court of law or

equity is not ground for vacating or refusing to confirm the award.

§ 44–7–12(A).

{14} In the absence of a statutory basis to vacate an arbitration award, the district court must enter an order confirming the award. *Fernandez*, 115 N.M. at 625, 857 P.2d at 25 (explaining that when there is no statutory ground for vacating or modifying an arbitration award, the district court must confirm the award). "In reviewing the determination of a lower court affirming an arbitration award, this Court is restricted to evaluating whether substantial evidence in the record supports the district court's findings of fact and application of law[.]" *Eagle Laundry v. Fireman's Fund Ins. Co.*, 2002–NMCA–056, ¶ 14, 132 N.M. 276, 46 P.3d 1276 (internal quotation marks and citation omitted).

{15} Our case law does not support KRSC's argument that broad notions of public policy inform the determination of whether arbitrators "exceeded their powers" within the meaning of Section 44–7–12(A)(3). Generally, the parties' agreement defines the scope of the arbitrator's powers. *Spaw-Glass Constr. Servs., Inc. v. Vista De Santa Fe, Inc.*, 114 N.M. 557, 559, 844 P.2d 807, 809 (1992) ("The arbitrator's powers are determined by the arbitration clause in the contract."). "Arbitrators exceed their powers when they attempt to resolve an issue that is not arbitrable because it is outside the scope of the arbitration agreement." *In re Town of Silver City*, 115 N.M. at 632, 857 P.2d at 32 (internal quotation marks and citation omitted). In this case, the parties' arbitration agreement required that "[a]ny controversy or [c]laim arising out of or related to the [c]ontract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association[.]" This broad delineation of the arbitrator's task does not provide much help to us in our analysis of the issue KRSC raises.

{16} Our Supreme Court provided guidance in this area when it examined Section 44–7–12(A)(3) in *Fernandez* and held that an arbitrator's error of law did not equate to the arbitrator's having exceeded his power. 115

N.M. at 628, 857 P.2d at 28. While recognizing a minority view that interpreted this section of the UAA to allow for judicial review of arbitration awards based on an arbitrator's legal error, our Supreme Court noted that

> [m]ost courts[ ] . . . read this section of the [UAA] narrowly and will only find that arbitrators have exceeded their powers when the arbitrators rule on a matter that is beyond the scope of the arbitration agreement, . . . removed from their consideration by statute, or removed from their consideration by case law.

*Id.* (internal citations omitted). The Court found the minority view inconsistent with the express limitations on judicial review of arbitration awards contained in Section 44–7–12(A)(5), which states that "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." *Id.* In addition, the Court held that allowing for review of arbitration awards on the merits of issues submitted to the arbitrators was inconsistent with the legislature's purpose in enacting the UAA, which was to reduce litigation in the courts. *Fernandez*, 115 N.M. at 628, 857 P.2d at 28.

{17} KRSC does not point to any statute or case law that "remove[s] from [the arbitrator's] consideration" the delegation of responsibilities for locating and marking underground facilities. Indeed, it is clear from the arbitration award that KRSC asked the arbitrator to decide whether such delegation had in fact occurred. Thus, it appears that KRSC deemed the question to be one within the arbitrator's power to consider, at least until the arbitrator decided the issue against KRSC.

{18} KRSC rests its argument on an analogy to the contract law doctrine providing that courts will not enforce contracts that violate public policy. *See Town of Groton v. United Steelworkers of Am.*, 254 Conn. 35, 757 A.2d 501, 508 (2000) ("A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public

policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (internal quotation marks and citation omitted)). Thus, KRSC's argument that the arbitration award violates public policy is in essence a claim that the courts should refuse to sanction the arbitration award because the relief granted in the arbitration award would not have been granted by a court. However, Section 44–7–12(A)(5) expressly states that this is not a basis to vacate an arbitration award under the statute.

{19} In summary, KRSC has not convinced us that anything in the UAA permits a court to vacate an arbitration award on public policy grounds. The district court determined that all the disputes between the parties were within the scope of the arbitration agreement. KRSC did not appeal that ruling and proceeded to arbitration. In arbitration, KRSC submitted to the arbitrator the issue of whether UNM had delegated its duties under the One–Call Statute to KRSC. We will not determine that an arbitrator has exceeded his or her powers under Section 44–7–12(A)(3), when the arbitrator fairly decides an issue submitted by the parties for resolution. *Fernandez*, 115 N.M. at 627, 857 P.2d at 27 ("So long as the award is made fairly and honestly and is restricted to the scope of the submission, it must be confirmed by the district court.").

**B. We Decline to Adopt a Judicially Created Public Policy Exception to the UAA**

{20} KRSC also argues that we should recognize a judicially created public policy basis to review arbitration awards in addition to the grounds enumerated in Section 44–7–12(A). The federal courts and some state courts have adopted a "public policy exception" to the normally strict limitation on judicial review of arbitration awards. *See, e.g., Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26–27 (2d Cir. 2000) (noting that judicial decisions have added a public policy basis to vacate arbitration awards in addition to the statutory grounds where enforcement would violate a well-defined and dominant public policy); *Seymour*

*v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1023 (10th Cir.1993) (noting that in addition to the grounds contained in the Federal Arbitration Act upon which a court can vacate an arbitration award, the courts have recognized a public policy exception that allows courts to decline to enforce arbitration awards); *Garrity v. McCaskey*, 223 Conn. 1, 612 A.2d 742, 745–46 (1992) (recognizing that a common law basis to strike an arbitration award in violation of public policy exists apart from legislative sources of judicial review of arbitration awards); *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 951 (Utah 1996) ("Rather than being a statutory ground, the public policy exception is a judicially created ground for vacating an arbitration award.").

{21} However, even those courts that recognize a public policy basis for vacatur of arbitration awards caution restraint. "[B]ecause the public policy doctrine allows courts to by-pass the normal heavy deference accorded to arbitration awards and potentially to 'judicialize' the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy." *Bureau of Special Investigations v. Coal. of Pub. Safety*, 430 Mass. 601, 722 N.E.2d 441, 444 (2000) (internal quotation marks and citation omitted). Courts that have recognized a public policy exception vacate an arbitration award only when it violates an explicit and fundamental public policy. *See, e.g., City of Highland Park v. Teamster Local Union No. 714*, 357 Ill.App.3d 453, 293 Ill.Dec. 341, 828 N.E.2d 311, 316 (2005) (noting that the public policy exception to enforcement of arbitration awards is extremely narrow and requires that the public policy be "well-defined and dominant and ascertainable by reference to the laws and legal precedents and not from generalized considerations of supposed public interests" (internal quotation marks and citations omitted)); *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 239 (Tex.2002) ("[A]n arbitration award cannot be set aside on public policy grounds except in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy."); *Buzas Baseball, Inc.*, 925 P.2d at 951 (stating that "the court must find a well-defined and

dominant policy against the described conduct after a review of the relevant laws and legal precedents" before it vacates an award on the ground that it violates public policy (internal quotation marks, citations, and alterations omitted)).

{22} This public policy exception is based on the contract law doctrine that courts will not enforce a contract that violates public policy. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy."). Because of this, we find it instructive to review New Mexico law on the standards for determining whether a public policy bars enforcement of a contract.

{23} In light of the strong public policy in favor of freedom of contract, we have held that "agreements ... are not to be held void as being contrary to public policy, unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way." *Berlangieri v. Running Elk Corp.*, 2002–NMCA–060, ¶ 11, 132 N.M. 332, 48 P.3d 70 (internal quotation marks and citation omitted), *aff'd on other grounds*, 2003–NMSC–024, 134 N.M. 341, 76 P.3d 1098; *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991) (stating that contracts in violation of public policy, as manifest in positive law, are unenforceable). We have recognized public policy violations where a contract expressly violates a statute. *See DiGesu v. Weingardt*, 91 N.M. 441, 442–43, 575 P.2d 950, 951–52 (1978) (finding a contract for a partial lease of a liquor license to violate public policy where partial leasing of liquor licenses was prohibited by the applicable regulation, and a state statute expressly limited the number of liquor licenses allowed in the state); *Weidler v. Big J Enters., Inc.*, 1998–NMCA–021, ¶ 18, 124 N.M. 591, 953 P.2d 1089 (stating that where an act is forbidden by statute, that is a statement of

public policy that can support a common law action for retaliatory discharge). "Whether a contract is against public policy is a question of law for the court to determine from all the circumstances of each case." *Berlangieri*, 2002–NMCA–060, ¶ 11, 132 N.M. 332, 48 P.3d 70 (internal quotation marks and citation omitted). Thus, even if we were to recognize a judicially created public policy exception to enforcement of arbitration awards, KRSC would have to establish that this arbitration award violated an explicit public policy expressed in a statute or judicial decision. It has failed to do so.

{24} KRSC argues that "any contractual delegation of One–Call Statute duties is void as being contrary to public policy." As evidence that a clear public policy exists against contractual delegation of One–Call Statute duties, KRSC argues that the One–Call Statute does not expressly or impliedly allow for delegation of One–Call Statute duties from the owner/operator of underground facilities to excavators. We are not persuaded. We will not read a public policy against contractual delegation of One–Call Statute duties into the statute based simply on the absence of language expressly allowing delegation. Nothing in the language of the One–Call Statute expresses a legislative declaration of a strong public policy against contractual delegation of an owner's duties to locate and mark underground facilities prior to excavation. *Cf.* NMSA 1978, § 38–2–9.2 (2001) (stating that "it is the public policy of New Mexico to protect the rights of its citizens to participate in quasi-judicial proceedings before local and state governmental tribunals"); NMSA 1978, § 10–15–1(A) (1999) (stating that "it is declared to be public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them"); *N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 2006–NMCA–047, ¶ 12, 139 N.M. 493, 134 P.3d 780 (finding that a contract violated public policy where it specifically contradicted provisions of the statute), *cert. granted*, 2006–NMCERT–004, 139 N.M. 429, 134 P.3d 120.

{25} Both KRSC and Amici argue that a public policy against contractual delegation of One–Call Statute duties can be inferred from the legislature's allocation of liability for mislocation or failure to locate underground facilities. *See* § 62–14–5(C) (stating that an owner/operator of underground facilities must reimburse an excavator for reasonable costs incurred as a result of the owner/operator's failure to correctly mark the facility); § 62–14–6(C) (stating that "[i]f any underground facility is damaged by any person who has made reasonable efforts to determine its location and damage to the underground facility is caused by the failure of the owner or operator to correctly locate that underground facility as provided in Section 62–14–5 ..., then the person engaging in the excavation shall have no liability for the damage to that facility"). Citing Section 62–14–5(C), KRSC argues that interpreting the One–Call Statute to allow for delegation of an owner's duties to an excavator would lead to illogical results because "[a]n excavator, by contract standing in the shoes of an owner or operator, would face no accountability for damage resulting from its own failure to locate and to mark the underground facility."

{26} We view this as an argument that the arbitrator incorrectly interpreted the One–Call Statute and an attempt to have us review de novo the arbitrator's interpretation of the One–Call Statute, which, as discussed above, we will not do. *See In re Town of Silver City*, 115 N.M. at 632, 857 P.2d at 32 ("De novo review of the merits of arbitration awards by the district court would only serve to frustrate the purpose of arbitration, which seeks to further judicial economy by providing a quick, informal, and less costly alternative to judicial resolution of disputes."). An arbitrator's incorrect interpretation of a statute is not sufficient to show that enforcement of the arbitration award would violate public policy. "An alleged error of law is not a violation of public policy." *Lyons v. Sch. Comm. of Dedham*, 440 Mass. 74, 794 N.E.2d 586, 590 (2003). While the provisions of the One–Call Statute cited by KRSC and Amici reflect a legislative judgment regarding allocation of liability for mislocation or failure to locate underground facilities in advance of excavation, they do not constitute an explicit statement of a fundamental public policy that parties are not free to delegate by contract the duties imposed under the statute.

{27} In contrast, two well-established New Mexico public policies support affirmance of the arbitration award in this case. Our case law has repeatedly recognized that "New Mexico ... has a strong public policy of freedom to contract that requires enforcement of contracts unless they clearly contravene some law or rule of public morals." *H–B–S P'ship v. Aircoa Hospitality Servs., Inc.*, 2005–NMCA–068, ¶ 28, 137 N.M. 626, 114 P.3d 306 (internal quotation marks and citation omitted); *see also McMillan v. Allstate Indem. Co.*, 2004–NMSC–002, ¶ 10, 135 N.M. 17, 84 P.3d 65; *Berlangieri*, 2003–NMSC–024, ¶ 20, 134 N.M. 341, 76 P.3d 1098. New Mexico also has a "strong public policy encouraging dispute resolution through arbitration and favoring finality and strictly limited court review of arbitration awards." *Spaw–Glass Constr. Servs., Inc.*, 114 N.M. at 558, 844 P.2d at 808; *see also Fernandez*, 115 N.M. at 625, 857 P.2d at 25 (noting that there is a strong public policy in New Mexico favoring resolution of disputes through arbitration). Given these longstanding, well-articulated policies and given the absence of any circumstances persuading us that there is a public policy against delegation of duties under the One–Call Statute, we affirm the district court's order confirming the arbitration award.

## C. Other Issues Raised by Amici

{28} Amici make the additional argument that enforcement of the arbitration award would violate public policy as expressed in NMSA 1978, § 56–7–1 (2005), New Mexico's Anti–Indemnification Statute, because it required KRSC to indemnify UNM for its negligence in failing to locate and mark the underground utilities. Even if we agreed with Amici's reading of the contract and the Anti–Indemnification Statute, the parties themselves have not made any argument under Section 56–7–1 in the briefs. Since the parties do not raise this issue, we do not address it. "Amic[i] must accept the

case before the reviewing court as it stands on appeal, with the issues as framed by the parties, and foregoing presentation of issues under the deficit of lack of preservation." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005–NMCA–022, ¶ 15, 137 N.M. 26, 106 P.3d 1273.

{29} For the same reason, we decline to address Amici's argument that contractual provisions that delegate duties under the One–Call Statute must be set out clearly and unambiguously to be enforceable. In addition, to the extent that Amici ask us to review the contract in this case to determine whether the delegation was clear and unambiguous, we note that the parties submitted this issue to the arbitrator, and the arbitrator found that the contract "effectively and unambiguously" delegated UNM's duty under the One–Call Statute to locate and mark its underground facilities to KRSC. The arbitrator's finding on this issue, even if erroneous, is not subject to judicial review. *Fernandez*, 115 N.M. at 625–26, 857 P.2d at 25–26 (holding that an arbitrator's mistake of law is not a basis to vacate an arbitration award if the award is fairly and honestly made and is within the scope of the submission).

## III. CONCLUSION

{30} Because KRSC failed to establish a basis for vacating the arbitration award, the district court correctly entered its order confirming the arbitration award. The judgment of the district court is affirmed.

{31} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.