This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40091

**FOUR CORNERS NEPHROLOGY ASSOCIATES, P.C., a New Mexico professional corporation; and MARK F. BEVAN, M.D., an individual,**

Petitioners-Appellants,

v.

**MANISH PANDYA, M.D.,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Court Judge**

Peifer, Hanson, Mullins & Baker, P.A.
Elizabeth K. Radosevich
Albuquerque, NM

for Appellants

Saucedo Chavez, P.C.
Ryan H. Harrigan
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Four Corners Nephrology Associates, P.C. and Mark F. Bevans (collectively, Four Corners) entered into a noncompete agreement with Manish Pandya, M.D. (Dr. Pandya), a shareholder in Four Corners' nephrology practice. When Dr. Pandya decided to leave the practice on September 30, 2018, he sought to limit what he

believed to be an overbroad limitation on his ability to practice medicine in Farmington, New Mexico, and in the Four Corners area. He filed a complaint seeking declaratory judgment in the district court. The complaint was referred to arbitration based on the terms of the noncompete agreement. The arbitrator entered a decision and order modifying the terms of the noncompete agreement. The arbitrator's decision and order was then adopted and confirmed by order of the district court. Shortly thereafter, Four Corners filed a motion for an order to show cause, claiming Dr. Pandya was violating the terms of the arbitrator's decision and seeking injunctive relief, sanctions, and attorney fees. The district court agreed with Dr. Pandya's construction of a key provision of the arbitration decision, and although finding de minimus violations by Dr. Pandya of one of the other provisions, refused to impose the injunctive relief, sanctions, or attorney fees sought by Four Corners. We agree with the district court's construction of the arbitration decision and are not persuaded that the district court abused its discretion in denying injunctive relief, sanctions, and attorney fees. We, therefore, affirm.

## DISCUSSION

**{2}** Because this is a memorandum opinion and the parties are familiar with the record, we discuss the facts as they are relevant to our discussion of the issues and omit a background section.

**{3}** Four Corners contends on appeal that the district court erred (1) in construing the arbitration decision to permit Dr. Pandya to treat patients with advanced kidney disease for their other medical conditions treated by internists, so long as their kidney disease was being treated by another nephrologist; (2) in denying Four Corners injunctive relief for the violations of the arbitration decision found by the court; (3) in refusing to award Four Corners compensatory sanctions for the violations; and (4) in denying Four Corners attorney fees. We address each of these arguments in turn.

## I.     The District Court Did Not Err in Construing the Arbitrator's Decision

## A.     Four Corners' Reliance on NMSA 1978, Section 44-7A-23 (2001) Is Misplaced

**{4}** Four Corners first challenges the finding of the district court that "in accordance with the [arbitration decision], [Dr. Pandya] is allowed to treat patients with level 4 or 5 kidney disease, as long as a different nephrologist is treating those patients' level 4 or 5 kidney disease, and those patients are not current patients of [Four Corners]." Four Corners argues that any construction, interpretation, or clarification of the arbitrator's decision by the district court amounts to modification of the decision and is prohibited by law.

**{5}** In support of its argument, Four Corners relies on cases arising under Section 44-7A-23, the provision of the New Mexico Arbitration Act addressing the confirmation

of an arbitration award by the district court.[1] This reliance on the law governing confirmation of an arbitration award is misplaced. Although the district court's authority to vary the language of the award in any way is strictly limited when it is asked to confirm an arbitration award, *see* NMSA 1978, § 44-7A-25(a) (2001),[2] the same is not true when the court is enforcing an arbitration award that has already been confirmed and adopted as a judgment of the court. NMSA 1978, Section 44-7A-26(a) (2001) of the New Mexico Arbitration Act addresses enforcement of a judgment confirming an arbitration award. That section provides that a judgment confirming an arbitration award is treated the same as any judgment entered by a district court in a civil action. *See id.* ("The judgment may be recorded, docketed and enforced as any other judgment in a civil action."). Because the arbitration decision in this case had been confirmed and entered as a judgment of the district court prior to the filing of the motion to enforce the arbitrator's decision, we apply the general law governing the construction and enforcement of judgments to guide our analysis.

## B. Principles Governing Construction of Judgments

**{6}** Having concluded that we review the district court's construction of the arbitrator's award as a civil judgment, we briefly review the governing law. The interpretation of a court order presents a question of law which we review de novo. *Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶ 14, 425 P.3d 739. "The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments. The plain meaning of the language is used as both the starting point and as the primary indicator of intent." *Id.* (internal quotation marks and citation omitted). "Where the language of a judgment or decree is clear and unambiguous, it must stand and be enforced as it speaks." *Allred v. N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 41, 388 P.3d 998 (alterations, internal quotation marks, and citation omitted). However, when an order or judgment is ambiguous or its language confusing or unclear, we look to the other portions of the judgment, and to the findings, and conclusions of law supporting the judgment, as well as to the pleadings for assistance in determining its intent. *Greer v. Johnson*, 1971-NMSC-127, ¶ 8, 83 N.M. 334, 491 P.2d 1145.

## C. Application of These Principles to the Arbitration Decision

**{7}** Four Corners contends that the plain language of the arbitration decision prohibits Dr. Pandya from providing any medical services of any nature to patients with advanced (level 4 or 5) kidney disease. Dr. Pandya contends that the language of the

---

[1] Four Corners relies on the following three appellate decisions, all of which address the district court's authority when asked to confirm or vacate an arbitration award following its entry: *Town of Silver City v. Garcia*, 1993-NMSC-037, ¶¶ 6-8, 115 N.M. 628, 857 P.2d 28; *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986); *K.R. Swerdfeger Constr. v. UNM Bd. of Regents*, 2006-NMCA-117, ¶ 14, 140 N.M. 374, 142 P.3d 962.

[2] Section 44-7A-25(a) limits the district court's authority when confirming an arbitration award to correcting (1) "evident mathematical miscalculation" or "evident mistake in the description of a person, thing or property"; (2) deleting an award on a claim not submitted to arbitration; and (3) correcting an error in the format of the award.

arbitration decision on this issue is ambiguous, and that when it is construed together with the arbitrator's findings of fact and conclusions of law, particularly the findings that there are unmet needs for medical care in the Four Corners area and that Dr. Pandya is permitted to practice internal medicine, the arbitrator intended to permit Dr. Pandya to treat patients with advanced kidney disease for conditions unrelated to their kidney disease, for example, treating their asthma or providing wound care, conditions generally treated by internists or general practitioners and not by nephrologists.

{8}     We begin with the language of the provisions in the arbitration decision addressing the restrictions on Dr. Pandya's practice of medicine. The arbitration decision as confirmed by the district court includes three documents: a preliminary injunction, an opinion granting partial summary judgment, and a modified final arbitration award that includes findings, conclusions, and a "Judgment and Restraining Order."

{9}     We look first at the relevant language of the judgment and restraining order. That order states in relevant part,

> Dr. Pandya may immediately practice internal medicine including treating any and all patients who have level 1-3 kidney disease.

We agree with the district court that this language is ambiguous. The phrase "including treating any and all patients who have level 1-3 kidney disease" can be read as excluding patients who have level 4 or 5 kidney disease, as Four Corners construes it, or as allowing treatment of patients with level 1-3 kidney disease for their kidney conditions, and level 4 and 5 patients only for their internal medicine needs, as Dr. Pandya construes it. This ambiguity is clarified by the arbitrator's findings of fact recognizing that patients with level 1-3 kidney disease are generally treated *for their kidney disease*, as well as for their other unrelated general medical conditions, by internists or general practitioners, and not by nephrologists. The parties agree that the arbitration decision allows Dr. Pandya, like other internists or primary care physicians, to treat level 1-3 kidney disease patients for *both* their kidney disease and their medical conditions unrelated to kidney disease: "Since internal medicine specialists can and do treat patients with stages 1-3 kidney disease[,] Dr. Pandya is not prohibited from treating new patients with stages 1-3 kidney disease." The arbitrator also finds that "[n]othing in the non[]compete agreements prevents Dr. Pandya from practicing internal or primary care medicine."

{10}    Construing these provisions together, we agree with the district court that the ambiguous phrase "including treating any and all patients who have level 1-3 kidney disease" is intended to clarify that Dr. Pandya can treat patients with stage 1-3 kidney disease for their kidney disease, as well as for their unrelated medical conditions. Only the treatment of level 1-5 kidney disease—treatment generally provided exclusively by nephrologists—is prohibited.

**{11}** Finally, we do not agree with Four Corners that the district court's addition of a requirement that a stage 4 or 5 kidney disease patient be under the care of a different nephrologist for their kidney disease as a precondition for any internal medicine treatment by Dr. Pandya is a "substantive change" to the arbitration award. The district court has enforced the arbitration award consistent with the intent of that award by providing a bright line to ensure that Dr. Pandya does not inadvertently provide prohibited nephrology care to level 4-5 kidney disease patients. The district court correctly notes that if the patient is not also seeing a nephrologist, Dr. Pandya would almost certainly be put in a position where he crosses over into treating the patient's kidney disease because they have no other care. The court therefore creates an enforceable line to ensure Dr. Pandya's compliance with the arbitration award.

## II. The District Court Did Not Abuse Its Discretion in Denying Four Corners' Request for Injunctive Relief

**{12}** Four Corners next contends that the district court abused its discretion when it refused to extend the three-year injunction imposed by the arbitrator on Dr. Pandya's practice of nephrology in the Four Corners area. Four Corners' first argument challenges the district court's failure to find that Four Corners suffered irreparable harm from Dr. Pandya's violation of the arbitrator's injunction on treating Four Corners' patients for any condition. Four Corners contends that the district court should have found irreparable harm as a matter of law, citing precedent imposing a presumption of such harm.

**{13}** Dr. Pandya asks us not to consider this issue, contending it was not preserved in the district court. "In order to preserve an issue for appeal, [an appellant] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. We note that Four Corners has not explained in either its brief in chief or its reply brief how this issue was preserved and has provided no citations to the record to show preservation. *See* Rule 12-318(A)(4) NMRA ("The brief in chief of the appellant . . . shall contain . . . a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on."). This Court will not search the record to determine whether an issue was preserved when citations are not provided. *See State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829. We, therefore, will not consider this issue.

**{14}** To the extent Four Corners also argues that the district court was required to grant an extension of the noncompete injunction to compensate Four Corners, we do not agree. Whether to grant an injunction is a matter within the discretion of the district court. *Hines Corp. v. City of Albuquerque*, 1980-NMSC-107, ¶ 13, 95 N.M. 311, 621 P.2d 1116. Even where there is a violation of a court order and a showing of irreparable injury, the district court is permitted to decide whether to grant or deny an injunction based on its weighing of the equities and the relative hardships. *Id.* The district court made findings weighing the equities and deciding they favored allowing Dr. Pandya to

resume the practice of nephrology after three years. We cannot say that the district court abused its discretion in finding that an extension of the injunction "is not merited under the facts and equities of this case."

### III. The District Court Did Not Abuse Its Discretion in Refusing to Impose Compensatory Sanctions or Award Attorney Fees to Four Corners

**{15}** Compensatory sanctions may include damages and attorney fees and are imposed for the purpose of compensating a party for pecuniary losses sustained due to violation of a court order. *See In re Hooker*, 1980-NMSC-109, ¶ 5, 94 N.M. 798, 617 P.2d 1313 ("The general rule is that a court has power to award damages and attorney[] fees to a party aggrieved by a contempt."). We review the district court's imposition of compensatory sanctions for abuse of discretion. *Tru Thi Tran v. Bennett*, 2018-NMSC-009, ¶ 30, 411 P.3d 345. "An abuse of discretion occurs when the court's ruling is clearly against the logic and effect of the facts and circumstances of the case or is based on a misunderstanding of the law." *Id.* (internal quotation marks and citation omitted).

### A. Compensatory Damages

**{16}** Four Corners contends that once it established a violation of the judgment confirming the arbitrator's award, the court abused its discretion by withholding compensatory damages. For this proposition, Four Corners relies solely on *El Paso Production Co. v. PWG Partnership*, 1993-NMSC-075, ¶ 31, 116 N.M. 583, 866 P.2d 311. We are not persuaded that this case supports Four Corners' contention. That case holds, in relevant part, that "once a plaintiff satisfies [their] burden of proving violation of a court order, proximate cause, and damages, [they are] entitled to judgment for recovery of those damages." *Id.* In this case, the district court found that there were no damages proximately caused by Dr. Pandya's violation of the court order. The district court found that any violations of the arbitrator's award had occurred in the past, that the violations did not affect Four Corners' revenue from dialysis (its primary income source), and that the evidence did not establish any injury or potential injury to Four Corners' reputation, or loss of patients or goodwill.

**{17}** Four Corners also fails to persuade us that the district court's finding that there was no proof of damages is not supported by the record. Apart from Dr. Pandya's admission that he received income of approximately $2,697 from treating a small number of Four Corners' patients for internal medicine issues, Four Corners cites no other evidence of damages. We are not persuaded that Dr. Pandya's $2,697 income qualifies as a measure of damages in the absence of proof that these patients would have been seen by Four Corners' nephrologists, or that those nephrologists would have provided and been paid for that primary care. *See Cent. Sec. & Alarm Co., Inc. v. Mehler*, 1996-NMCA-060, ¶ 12, 121 N.M. 840, 918 P.2d 1340 (recognizing that restitution and damages are not the same, and that restitution is not an appropriate measure when damages are sought).

**B.     Attorney Fees**

**{18}**     Four Corners claims it is entitled to attorney fees both as a compensatory sanction and as the prevailing party. Four Corners first argues that the award of an attorney fee as a compensatory sanction to a party who shows a violation of a court order is mandatory. We do not agree. "In the prosecution of the contempt proceedings[,] *the trial court in its discretion may allow* the complainant a reasonable attorney[] fee to be assessed against the violator as part of the expenses and costs incurred by the complainant." *Royal Int'l Optical Co. v. Tex. State Optical Co.*, 1978-NMCA-094, ¶ 55, 92 N.M. 237, 586 P.2d 318 (emphasis added). Given the district court's findings that Four Corners did not prove any damages incurred as a result of Dr. Pandya's violations, that any violations were de minimus, and that these violations had stopped well before the district court's order was entered, we are not persuaded that the district court decision not to award attorney fees as a compensatory sanction was an abuse of discretion.

**{19}**     As to Four Corners' claim to be entitled to attorney fees as the prevailing party, we note that it is settled law that the district court can deny attorney fees under a contract provision providing for fees to the prevailing party if it finds that neither party prevailed. *See Hedicke v. Gunville*, 2003-NMCA-032, ¶ 28, 133 N.M. 335, 62 P.3d 1217 ("[I]f each party prevails on one claim and loses on one claim, the trial court could and may conclude that neither is ultimately a prevailing party on those claims."). The district court found in this case that neither party prevailed.

**{20}**     "On appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." *See State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 8, 447 P.3d 1159 (alterations, internal quotation marks, and citation omitted). It is, therefore, Four Corners' burden, as the appellant, to persuade us that the district court erred. Four Corners fails to make any argument refuting the district court's finding that neither party prevailed on the merits. Given that Dr. Pandya prevailed on one of two disputes about the construction of the arbitrator's award and Four Corners on the other, and that the court refused to award any of the damages or injunctive relief sought by Four Corners, we do not agree that the district court abused its discretion in finding that neither party prevailed. We therefore affirm the district court's denial of attorney fees to Four Corners.

**CONCLUSION**

**{21}**     For the reasons stated, we affirm the judgment of the district court.

**{22}     IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation**