2006-NMCA-086

140 P.3d 543

Ray J. CAMPOS and Rosario A. Campos, husband and wife, Ernest E. Litterick, Michael D. Lovato, Richard S. Lujan, Joseph D. Rivera and Kimberly D. Rivera, husband and wife, Paul Anthony Sanchez and Kristy Ann Deherrera, husband and wife, Joe T. Shelton and Melissa A. Shelton, husband and wife, Plaintiffs–Appellees,

v.

HOMES BY JOE BOYDEN, L.L.C., Joe Boyden Construction, Inc., and Prudential Southwest Realty, a/k/a Prudential Preferred Properties, Defendants–Appellants.

No. 25,228.

Court of Appeals of New Mexico.

May 22, 2006.

Certiorari Denied, No. 29,852, July 21, 2006.

Allison & Fisher, Michael Allison, Albuquerque, NM, for Appellees.

Felker, Ish, Ritchie & Geer, P.A., Mark L. Ish, Carol J. Ritchie, Santa Fe, NM, for Appellants.

**OPINION**

SUTIN, Judge.

{1} Plaintiffs purchased residential lots subdivided by Defendant Homes by Joe Boyden, L.L.C. (Boyden Homes) and homes later constructed on those lots by Defendant Joe Boyden Construction, Inc. (Boyden Construction). The purchases involved various contract documents between Plaintiffs and either Boyden Homes or Boyden Construction. Defendant Prudential Southwest Realty, a/k/a Prudential Preferred Properties (Prudential), was the real estate broker that represented the lots and the homes to be constructed by Boyden Construction.

{2} Plaintiffs sued Defendants in tort and contract because, after their homes were constructed, Plaintiffs discovered that an undeveloped area bordering on their lots and homes was going to be developed with residences, contrary to Prudential's representation that the area was city land that would remain open space with no residential development. The litigation immediately focused on whether an arbitration provision in one of the contractual documents controlled, thereby requiring the lawsuit to be stayed pending arbitration. The district court ruled that Plaintiffs' claims did not fall within the scope of the arbitration provision and denied the motion of the Boyden Defendants to dismiss or compel arbitration. The Boyden Defendants appeal that determination. *See* NMSA 1978, § 44–7A–29(a)(1) (2001) (permitting an appeal from an order denying a motion to compel arbitration). We affirm the district court's denial of the motion to compel arbitration.

## BACKGROUND

{3} Plaintiffs first entered into a new construction purchase agreement for their respective lots and homes. Paragraph 10 of that agreement stated that the seller, Boyden Homes, would provide a home warranty at its expense "to remedy any substantial defect in workmanship or materials of the dwelling." The paragraph also provided that the seller would provide a "2–10 Home Buyers Warranty." Plaintiffs each signed a form called "Builder Application for Home Enrollment" (the enrollment form). The enrollment forms were submitted to an entity called the Home Buyers Warranty Corporation (HBW) for the purpose of completing Plaintiffs' enrollment in the 2–10 warranty program. Boyden Homes was a "Builder–Member" of HBW. The enrollment form contains the following provision:

HOME BUYERS ACKNOWLEDGEMENT AND CONSENT

Your Builder is applying to enroll your home in the HBW-insured warranty program. By signing below, you acknowledge that you have viewed and received a video of "Warranty Teamwork: You, Your Builder & HBW", you have read the Builder's Copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS INCLUDING THE BINDING ARBITRATION PROVISION contained therein. You further understand that when the warranty is issued on your new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the HBW Warranty Booklet. IF YOU, THE HOMEBUYER(S) HAVE NOT RECEIVED A CERTIFICATE OF WARRANTY COVERAGE AND A WARRANTY BOOKLET FROM HBW WITHIN THIRTY (30) DAYS AFTER CLOSING, THEN NO WARRANTY EXISTS ON THE HOME AT THIS ADDRESS.

Plaintiffs received a certificate of warranty coverage showing that Boyden Homes had enrolled each of Plaintiffs' homes in the warranty program, and also received HBW Insurance Services, L.L.C.'s thirty-two page warranty booklet.

{4} The arbitration provision at issue in this case is in the warranty booklet. It states among other things that the parties agree to arbitrate:

Any and all claims, disputes and controversies by or between the Homeowner, the Builder, the Warranty Insurer and/or HBW, or any combination of the foregoing, arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the Builder, including without limitation, any claim of breach of contract, negligent or intentional misrepresentation or nondisclosure in the inducement, execution or performance of any contract, including this arbitration agreement, and breach of any alleged duty of good faith and fair dealing[.]

{5} The warranty booklet contains various warranties relating to defects and defines "defect" as a "failure to meet the Construction Quality Standards for workmanship and systems as set forth in this Agreement." The warranty booklet also provides that if the home buyer believes the home has a defect that is covered under the warranty, reports the defect, and the issue is not resolved, HBW will provide a form to request arbitration.

{6} The crux of Plaintiffs' various claims in tort and contract is representations regarding open space just beyond their backyard walls next to their homes. The Boyden Defendants contend that the broadly worded arbitration agreement, including particularly the language regarding misrepresentations in home sales, applies to all of Plaintiffs' claims because the claims reasonably relate to the contract documents. *See K.L. House Constr. Co. v. City of Albuquerque*, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978) ("When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters."). The Boyden Defendants therefore assert that the district court erred in refusing to compel arbitration of Plaintiffs' claims.

## STANDARD OF REVIEW

{7} The parties do not argue that factual issues exist and they rely only on interpretation of documentary evidence. We therefore review the district court's interpretation of the arbitration agreement de novo. *Horanburg v. Felter*, 2004–NMCA–121, ¶ 8, 136 N.M. 435, 99 P.3d 685.

## DISCUSSION

■ {8} The warranty for Plaintiffs' properties is the focus of our analysis. The certificate of warranty coverage states that Plaintiffs were enrolled in a specific warranty program, including "One Year Workmanship/Two Year Systems/Ten Year Structural" warranties. This certificate states that the enrollment form, the certificate, and the warranty booklet "make up your warranty contract." The warranty booklet sets out the one-year workmanship, the two-year systems, and ten-year structural "express limited" warranties. The warranty booklet states:

> This Warranty Booklet and your Certificate of Warranty Coverage is your Builder's Limited Warranty to you. Your Builder warrants that, within the limitations described in these two documents, your Home will be free from qualifying structural defects, and if so indicated on your Certificate of Warranty Coverage, will also be free from defects in workmanship and systems.

The warranty booklet focuses on defects and the repair and replacement of any covered defects. It contains pages with descriptions of deficiencies, "Construction Quality Standards," "Builder/Warrantor Responsibility," and the "Exclusion" related to each deficiency, all in relation to the one-year workmanship and the two-year systems warranty coverages. It is unmistakably amidst this warranty package that the arbitration provision in question is placed.

■ {9} The court is to interpret arbitration provisions by rules of contract law. *Pueblo of Laguna v. Cillessen & Son, Inc.*, 101 N.M. 341, 343, 682 P.2d 197, 199 (1984). Generally, "all writings forming a part of a transaction are interpreted together as a harmonious whole" and "[n]o single portion may be selected to indicate either clarity or ambiguity." *McDonald v. Journey*, 81 N.M. 141, 142–43, 464 P.2d 560, 561–62 (Ct.App. 1970). The intention of the parties to a contract is to be determined from the contract as a whole, "with meaning and significance given to each part in its proper context." *Schaefer v. Hinkle*, 93 N.M. 129, 131, 597 P.2d 314, 316 (1979). The general rule is that "any uncertainties in a contract must be construed most strongly against the party who drafted it." *Manuel Lujan Ins., Inc. v. Jordan*, 100 N.M. 573, 576, 673 P.2d 1306, 1309 (1983). Interpretation of broad arbitration provisions requires the court to focus on the subject matter of the underlying agreement and the subject matter of the dispute. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002–NMCA–030, ¶ 56, 131 N.M. 772, 42 P.3d 1221. "[T]he subject matter of the underlying agreement determines the scope of the arbitration provision." *Id.*

{10} The district court saw the arbitration provision as part of the warranty package. Following argument on the Boyden Defendants' motion, the district court stated, "[T]his is my quick cap on it: I think 'defects' is the key word[,]" and the court determined that the arbitration provision did not go "as far as the Defendants have stated." We think the district court's focus on the warranty was correct.

{11} We acknowledge that the arbitration provision includes wording saying that claims, disputes, and controversies arising from or related to the sale of the home, including any claim of breach of contract, and negligent or intentional misrepresentation, shall be submitted to arbitration. However, we are unpersuaded that these words should be read outside the warranty context or outside the rest of the language of the provision. The arbitration provision was not in the new construction purchase agreement. The provision did not appear in any of Plaintiffs' contract documents until after Plaintiffs received the warranty booklet. The representative documents in the record show that Plaintiff Ray Campos signed a new construction purchase agreement dated in July 2001. Campos did not sign an enrollment form until January 2002. The certificate of Campos' warranty coverage shows it was printed

on January 31, 2002, and bears a "Received Feb. 08 2002" stamp. The 2–10 warranty booklet shows a 2002 copyright and also "HBW APP 307 10/1/02." Nothing in the record indicates that Plaintiffs were ever made aware of an oncoming arbitration clause until they signed the enrollment form. The enrollment form related solely to the 2–10 warranty program. Plaintiffs received the warranty booklet after their homes were built.

{12} The arbitration provision is in the context of "claims, disputes and controvers[ies]" between Plaintiffs and Defendants in Defendants' capacity as "Builder[s]" of the homes. The "claims, disputes and controvers[ies]" need to arise from the "Warranty" or the "Home" or any defect in either the home or the "real property" or "*the sale of the subject Home by the Builder.*" (Emphasis added.)

{13} Plaintiffs' claims are based an alleged misrepresentation as to the nature of adjoining land made in anticipation of the sale of real estate to Plaintiffs. Plaintiffs are not suing on a written warranty. Plaintiffs are not suing because of anything Defendants did as the builder, nor are they suing because of a defect in the real property on which the homes are built. The unmistakable tenor of the contract documents is that arbitration was required of claims for defects in need of repair or replacement. The Boyden Defendants have not presented evidence that the parties intended the arbitration provision to cover claims for misrepresentation of the type claimed by Plaintiffs in their complaint. Under the facts of this case, the rule calling for a broad interpretation of arbitration provisions cannot be applied to favor the Boyden Defendants' argument. The most reasonable construction of the contract documents is that the arbitration provision was intended to apply to the resolution of home construction-related problems and not to representations made to prospective purchasers in the context and under the circumstances of this case. We therefore hold that the district court was correct in reading the arbitration provision as it did.

## CONCLUSION

{14} We affirm the district court's denial of the Boyden Defendants' motion to compel arbitration.

{15} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.