BROWN, Chief Judge.
 

 |,James M. Brown Builder, Inc., develops subdivisions in Bossier Parish, Louisiana. James M. Brown Builder, Inc., and other Brown companies (Brown’s Property
 
 *1024
 
 Development, Inc., James M. Brown Real Estate, Inc., and Brown Builders, Inc.) were named as defendants in this action. In July 2006, these corporate defendants transferred, for the stated price of $100, all mineral rights in all property they owned in Bossier Parish to defendants James D. Brown, his wife, Annie M. Brown, B. Wayne Brown, and his wife, Ellen Brown.
 
 [1]
 
 These mineral deeds were filed in the conveyance and mortgage records of Bossier Parish, Louisiana.
 

 After the corporate defendants transferred the minerals to their corporate officers, plaintiffs, Charles Richard and Carol Casares, Brian and Darbi Rice, Melvin and Joyce Edwards, III, purchased newly built homes on affected properties from James M. Brown Builder, Inc. At their respective closings, plaintiffs were tendered “Cash Sale Deeds” which made no reference to or reservation of mineral rights. During the closings plaintiffs were offered and signed a “Builder Application for Home Enrollment” to accept the “Home Warranty 2-10” program. After enrolling in the limited warranty program each of the current plaintiffs received a
 
 2-10 Home Buyers Warranty Booklet;
 
 this pamphlet was 32 pages, single spaced and contained information on the limited warranty coverage as well as the arbitration clause at issue.
 

 After the sale of the homes to plaintiffs, publicity concerning the Haynesville Shale (a natural gas formation underlying several northern |2Louisiana parishes) was discovered, and publicity quickly intensified. During the leasing frenzy that ensued, the individual Brown defendants executed mineral leases in favor of Audubon Oil and Gas Corporation and Twin Cities Development, L.L.C.
 
 [2]
 
 After learning that they could not lease the minerals under their tracts, plaintiffs filed this suit on their behalf and on behalf of all persons who purchased property from the Brown companies subsequent to July 6, 2006. Plaintiffs sought class certification, alleging fraud, unfair trade practices, breach of warranties, breach of contract, and negligent misrepresentation.
 

 In response to plaintiffs’ lawsuit, defendants filed a dilatory exception of prematurity asserting that under the home warranty contract this matter must be submitted to binding arbitration. Defendants also filed a dilatory exception of vagueness regarding plaintiffs’ fraud claim. The trial court granted both exceptions.
 

 Discussion
 

 Prematurity-Arbitration Agreement
 

 The
 
 2-10 Home Buyers Warranty Booklet
 
 given to plaintiffs at closing contained a section requiring binding arbitration. Both the Federal Arbitration Act, 9 U.S.C. § 1,
 
 et seq.
 
 (“FAA”), and Louisiana Arbitration Law, La. R.S. 9:4201,
 
 et seq.,
 
 embody a liberal policy favoring arbitration.
 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983);
 
 Aguillard v. Auction Management Corp.,
 
 04—2804 (La.06/29/05), 908 So.2d 1. The FAA and Louisiana Arbitration Law are virtually identical, and Louisiana courts look to federal cases in its application of the law. 9 U.S.C. § 1,
 
 et seq.;
 
 La. R.S. 9:4201,
 
 et seq.
 

 The question of whether the parties to an agreement are obligated to submit a dispute to arbitration is essentially a mat-
 
 *1025
 
 ter of construing the agreement.
 
 AT & T Techs., Inc. v. Commc’ns. Workers of Am.,
 
 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Thus, “ ‘a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.’ ”
 
 AT & T Techs., Inc.,
 
 475 U.S. at 648, 106 S.Ct. at 1418, (quoting
 
 United Steelworkers of America v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960));
 
 see also, Title v. Enron Corp.,
 
 463 F.3d 410 (5th Cir.2006);
 
 Collins v. Prudential Ins. Co. of America,
 
 99-1423 (La.01/19/00), 752 So.2d 825.
 
 [3]
 

 In the case
 
 sub judice,
 
 the primary question is whether the parties agreed to submit the issue of arbitrability to arbitration. In its written opinion the trial court states:
 

 Please be advised this Court is not making a determination that this matter will be accepted by the arbitrator nor is this Court issuing an opinion as to whether or not the scope of this arbitration agreement serves to encompass the issue in this lawsuit. Rather, the Court is of the opinion that there does exist an arbitration agreement and to move forward with this lawsuit would be premature at this time.
 

 | ..[This statement makes it apparent that the trial court left it to the arbitrator to decide whether the dispute in question was covered by the limited arbitration clause contained in the
 
 2-10 Home Buyers Warranty Booklet.
 

 In brief, defendants contend that the trial court correctly refused to consider “[the] issues pertaining to the precise scope of the arbitration agreement.” The brief further contends that the trial court “properly referred these matters to the arbitrator as required both by Louisiana Law and the express terms of [the arbitration] agreement.”
 

 La. R.S. 9:4202 provides:
 

 If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending,
 
 upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement,
 
 shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration. (Emphasis added).
 

 “The question of arbitrability— whether [an agreement] creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination.”
 
 AT & T Techs., Inc.,
 
 475 U.S. at 649, 106 S.Ct. at 1418. Unless the agreement “clearly and unmistakably” provides otherwise, the question of whether a dispute is arbitrable is for the court rather than the arbitrator to decide.
 
 Id.; see also, First Options of Chicago, Inc. v. Kaplan,
 
 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (“Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.”);
 
 Salinas Cooling Co. v. Fresh Fruit & Vegetable Workers, Local P-78
 
 
 *1026
 

 A,
 
 743 F.2d 705, 707 (9th Cir.1984) (stating that the “strong policy favoring arbitration of labor disputes ... does not relieve the district court of its duty to make the arbi-trability determination”).
 

 In light of the court’s authority to decide whether a dispute is arbitrable, arbitration should not proceed until a court has resolved the threshold question of whether the dispute at issue is covered by the arbitration agreement. The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the agreement does in fact create such a duty.
 
 John Wiley & Sons, Inc. v. Livingston,
 
 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964);
 
 Oil, Chemical, & Atomic Workers International Union v. Conoco, Inc.,
 
 241 F.3d 1299 (10th Cir.2001).
 

 The arbitration clause in the
 
 2-10 Home Buyers Warranty Booklet
 
 states, in pertinent part:
 

 This arbitration agreement shall be deemed to be a self-executing arbitration agreement. Any disputes concerning the interpretation or enforceability of this arbitration agreement, including without limitations, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator.
 

 To determine the reach of the arbitration agreement at issue, we must apply Louisiana rules on contract interpretation.
 
 Title, supra.
 
 Contract interpretation is a determination of the common intent of the parties. La. C.C. art.2045. Furthermore, under Louisiana law, “[e]ach provision in a contract must be interpreted in light of the other provisions so that each is |figiven the meaning suggested by the contract as a whole.” La. C.C. art.2050.
 

 Thus, we must examine the structure of the overall agreement and the context of the “arbitrability” language. The authority of the arbitrator to consider the revoca-bility, voidability, or scope applies when a dispute is clearly arbitrable. While the “[a]ny and all claims, disputes and controversies ... arising from or related to” language of the opening paragraph of the arbitration agreement at issue is somewhat broad in nature, the subsequent wording in that provision narrows the arbitration agreement’s coverage. The arbitration agreement pertains to disputes “arising from or related to this Warranty, to the subject Home, to any defect in or to the subject Home or the real property on which the subject Home is situated, or the sale of the subject Home by the builder[.]” It is clear in the present case that the dispute does not arise from or relate to the warranty, the subject home, the sale of the subject home, or to any defect in or to the subject home.
 
 [4]
 
 Thus, our analysis will focus on whether the dispute falls within the scope of the defect in or to the real property on which the subject home is situated.
 

 A thorough reading of the
 
 2-10 Home Buyers Warranty Booklet
 
 reveals that the limited warranty applied only to defects, defects in workmanship, systems, or to the structure itself. “Defect” is defined in the
 
 ]£-10 Home Buyers Warranty Booklet
 
 as “a failure to meet the Construction Performance Guidelines for workmanship and systems as set forth in this Agreement.” Only defects in workmanship had any
 
 *1027
 
 bearing on real property. Narrowing this down further, the only type of real property defects covered by the warranty, as per the Construction Performance Guidelines, were deficiencies in site work.
 

 In fact, the entire warranty concerns only home construction-related defects. Specifically, Section III of the warranty states, in pertinent part:
 

 If You believe Your Home has a Defect that is covered ... You must first write your Builder listing the specific warranty Defect(s) ... if repairs are not made within sixty (60) days ...
 

 1. Complete the Notice of Complaint Form (“Notice”) ...
 

 2. Send one copy of the Notice to Your Builder
 

 3. Send one copy of the Notice ... to [HBW]
 

 Once Your Notice has been received by HBW, HBW will again notify Your Builder of Your complaint. If your Builder and You are unable to resolve your differences either by yourselves or with IiBW’s help, You must arbitrate Your dispute (see Section VII, ARBITRATION).
 

 This section of the contract gives context to the arbitration section and assuages any ambiguities as to when the parties are required to arbitrate their disputes — when the home has a defect and the builder will not make the needed repairs.
 
 See Campos v. Homes by Joe Boyden, L.L.C.,
 
 140 N.M. 122, 140 P.3d 543 (N.M.Ct.App.2006),
 
 cert. denied,
 
 140 N.M. 279, 142 P.3d 360 (N.M.2006) (holding that an identical arbitration clause was not applicable since plaintiffs were not suing because of anything the builder did as the builder).
 

 |KThus, the provision pertaining to arbi-trable disputes, read in conjunction with the contract as a whole, makes it clear, and we can say with assurance, that the parties never intended for or agreed to a mineral rights (title) dispute being submitted to arbitration. Such an encumbrance clearly relates to the clarity of the title, which is customarily checked by an attorney prior to closing. At that time, title insurance is usually written to cover the title work.
 

 Based upon the aforementioned, it is evident that the dispute in question does not fall within the ambit of the home warranty contract or the arbitration agreement contained therein. Therefore, because no arbitrable issues are presently in dispute, we find that the trial court erred in leaving it to the arbitrator to decide the reach of the arbitration agreement. We further find that the context of the home warranty does not apply to this dispute.
 

 Vagueness
 
 — Fraud
 

 In their second assignment of error, plaintiffs contend that the trial court erred in granting defendants’ dilatory exception of vagueness with regards to their fraud claim.
 

 The purpose of the exception of vagueness is to place the defendant on notice of the nature of the facts sought to be proved so as to enable him to identify the cause of action, thus preventing future relitigation after a judgment is obtained.
 
 Williams v. State,
 
 34,691 (La.App.2d Cir.05/09/01), 786 So.2d 927. However, the exception does not entitle the defendant to demand exactitude and detail of pleading beyond what is necessary to fulfill the obligations outlined above.
 
 Vanderbrook v. Jean,
 
 06-1975 (La.App. 1st Cir.02/14/07), 959 So.2d 965. If the plaintiffs petition fairly informs the defendant of the nature of the cause of action and includes sufficient substantial particulars to enable the defendant to prepare its defense, then the exception of vagueness
 
 *1028
 
 will be denied.
 
 Williams, supra; Vanderbrook, supra.
 

 Fraud is the cause of action alleged by plaintiffs that is at issue in defendants’ exception of vagueness. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art.1953. In pleading fraud, the circumstances constituting fraud must be alleged with particularity; however, malice, intent, knowledge, and other conditions of the mind may be alleged generally. La. C.C.P. art. 856.
 

 After reviewing the petition filed by plaintiffs, we find that there was sufficient information to place defendants “on notice of the nature of the facts sought to be proved so as to enable [them] to identify the cause of action,” and “to prepare [their] defense.” This finding, however, lends no credence to the merit of plaintiffs’ fraud claim. Obviously, because defendants filed their mineral deeds in the public record they did not suppress the transference of the minerals. Thus, without affirmative information to show intentional misrepresentation, this cause of action seems prime for a summary judgment motion.
 

 Conclusion
 

 For the reasons stated herein, the judgment of the trial court granting defendants’ dilatory exceptions of prematurity and vagueness is hereby |inreversed and the matter is remanded for further proceedings. Costs of this appeal are assessed to defendants.
 

 [1]
 

 . These parties are the owners and officers of the corporate defendants.
 

 [2]
 

 . Audubon Oil and Gas Corporation and Twin Cities Development. L.L.C., were also named as defendants. The trial court granted Audubon’s no right of action exception because its lease did not cover the particular lots owned by plaintiffs.
 

 [3]
 

 . We do not reach plaintiffs’ argument that because only James M. Brown Builder, Inc., signed the deeds and warranty agreements with the arbitration clause, the other Brown defendants cannot be compelled to arbitrate this dispute. We note that in
 
 Grigson v. Creative Artists Agency, L.L.C.,
 
 210 F.3d 524, 528 (5th Cir.2000), the court stated that they "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny arbitration's applicability because the defendant is a non-signatory.”
 

 [4]
 

 . This is based on “Home” being defined in the
 
 2-10 Home Buyers Warranty Booklet
 
 as "the dwelling and the garage.” With regards to the sale of the subject home, we find that if the drafter of the contract intended to include the immovable property, it would have stated the sale of the subject home and the real property on which it is situated, as was previously stated regarding defects.