This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JOHN N. HORNE,**

    Plaintiff-Appellant,

v.                                **NO. 29,822**

**LOS ALAMOS NATIONAL SECURITY, LLC, GEORGE PETER NANOS, and KEVIN W. JONES,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY**
**Stephen D. Pfeffer, District Judge**

Timothy L. Butler
Santa Fe, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb PA
Jeffrey Lowry
Thomas A. Outler
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Plaintiff John Horne prevailed in a binding arbitration against Los Alamos National Security, LLC, (LANS) on a grievance he filed regarding discipline imposed on him after an incident in which classified materials were not properly accounted for. Neither Horne nor LANS moved to confirm, modify, or vacate the award. Subsequently, Horne filed a lawsuit against LANS and two LANS employees. The district court awarded summary judgment in favor of LANS, concluding that Horne's exclusive remedy was a timely motion to vacate or correct the arbitration award, and that his claims had been waived. Because LANS has not shown whether the arbitrator ruled on the scope of the arbitration agreement, and because this appears to be a disputed issue of material fact, we reverse.

## I.    BACKGROUND

For the purposes of its motion to dismiss, LANS accepted the allegations in Horne's complaint as true. Horne began work at Los Alamos National Laboratory in September 1983. He started as a machinist and eventually worked his way to the explosive testings group. By fall of 2003 Horne was an "experimentalist" in the explosive testings group, responsible for completing hydrodynamics tests. Horne's job frequently required him to access classified material.

Laboratory policy required that employees notify a classified matter custodian (CMC) of the creation of physical media containing classified information (called

"CREM," for Classified Removable Electronic Media) so that the CMC could enter the CREM into an accountability system. Operating procedures called for employees to obtain bar codes from the CMC, affix the bar codes to the CREM, and give the CREM to the CMC for entry into the system. If the CMC was not available, employees were to place the CREM in a secure depository and notify the CMC that they had done so.

In the fall of 2003 Horne was assisting with a conference. During this conference, ten classified zip disks were created for which Horne was responsible. Horne had been given twelve bar codes to use to identify any CREM that were created. Unbeknownst to Horne, the CMC had already entered each of the bar codes into the accountability system. The CMC did not remove the two unused bar codes from the system when he received the ten disks from Horne.

Subsequently, an audit showed that CREM associated with the two bar codes were missing. The lab eventually determined that the discrepancy was due to the CMC entering the two bar codes into the system that had never actually been associated with CREM. Nevertheless, Horne was placed on two weeks of unpaid leave and was issued a security infraction for failing to account for the CREM. Based on these events, on January 24, 2005, Horne filed an internal administrative complaint.

Over two years later, on May 9, 2007, Horne and LANS entered into a Formal Hearing Agreement—essentially an agreement to arbitrate. The agreement specified that a "formal hearing will resolve all matters raised in the complaint that have not been previously resolved." It further specified that "[t]he employee agrees that s/he will not file any administrative or legal actions regarding the matters raised in the complaint." The agreement also provides that any hearings held

> will be conducted under the authority of and in accordance with the provisions of AM 111 [Laboratory's Administrative Manual Policy] and the rules of the organization providing the hearing officer, insofar as the organization's rules are consistent with AM 111. In the event of a conflict between AM 111 and the rules of the organization, AM 111 will take precedence.

AM 111 is LANS own complaint resolution policy.

Horne's administrative complaint was attached to the agreement and indicated that the remedies sought by Horne were "removal of letter of reprimand, repay[ment of ten] days of compensation including benefits[,] reinstate[ment of] lost vacation time[, and] reimbursement of any fees incurred." Two boxes were checked on the administrative complaint. The first was for "Salary decrease, withholding of a salary increase, demotion, or suspension without pay." The second was for "Retaliation for using AM 111 or any other policy that protects employees from retaliation." The complaint included an attachment describing the adverse effects on Horne's employment:

4

This situation has had severe consequences in my personal life and has caused irreparable harm to my reputation and to my ability to advance in the career path that I had chosen to pursue. The association of my good name to the unsubstantiated claims and unethical actions of Pete Nanos, Kevin Jones, Mary Hockaday, Mike Irving, et al. has created a hostile work environment for me as well as essentially destroying any hope for future advancement. This shameless attempt to validate the aforementioned acts and accusations through official sanction is not only unethical but is in violation of AM111, AM112, and AM729.

On June 21, 2007, Horne signed and submitted a demand for arbitration under the American Arbitration Association Employment Arbitration Rules Demand for Arbitration (demand for arbitration). Horne asserts the demand for arbitration form was prepared by LANS and presented to him for signature. The demand for arbitration describes the nature of the dispute as:

Was the written reprimand with a ten-day suspension without pay issued to Mr. Horne on December 16, 2004[,] done in compliance with laboratory policies and procedures? Was Mr. Horne retaliated against for having utilized the IG's whistleblower hotline?

Also, the demand for arbitration describes the claim or relief sought as:

AM 111 (the laboratory's internal grievance process): "A hearing officer is limited to restoring any pay benefits, or rights lost as a result of the action taken and may, in his or her discretion, award costs, expenses and attorney[] fees in favor of the prevailing employee.

The arbitrator heard the dispute on December 11, 2007. Horne asserts that he "sought to expand the scope of the hearing to deal completely with all of the issues raised in his administrative grievance[,]" but that his request was denied. Horne also

5

notes that at the arbitration hearing, he "withdrew" his IG retaliation claim. Horne asserts he "agreed the only issue to be tried was the policy and procedure violation, objected to the improper narrow scope of the proceeding . . . and specifically reserved his rights to bring other claims outside the scope of the arbitration."

The arbitrator issued his decision on February 20, 2008, finding that the "decisions to find an 'infraction' on the part of Mr. Horne, and to administer discipline on that basis are wholly unreasonable." The arbitrator ordered LANS to (1) pay all wages and benefits lost by Horne; (2) reimburse Horne's attorney fees; and (3) "restore any loss of rights which Mr. Horne may have sustained as a result of the unfounded 'infraction' and the adverse personnel action arising from the report of that infraction." The decision does not elaborate as to what those rights might be. Neither Horne nor LANS attempted to vacate or to confirm the arbitrator's judgment. Horne took a voluntary reduction in force in December 2007. The record does not indicate whether he did this before or after the hearing.

The only direct evidence of the arbitration proceedings in the record is the interim decision and award of arbitrator. The decision does not reveal any explicit finding by the arbitrator as to the scope of the arbitration. The decision does quote AM111.16 as an apparent guide to what the arbitrator perceived as his task at least with regard to remedies. AM 111.16 provides: "A hearing officer . . . is limited to

6

restoring any pay, benefits or rights lost as a result of the action taken and may, in his or her discretion, award costs, expenses, and attorney[] fees in favor of the prevailing party." The decision does not include any factual findings or conclusions concerning retaliation.

On December 12, 2008, about ten months after the date of the award, Horne filed this lawsuit in district court. The eight-count complaint alleged retaliation under the New Mexico Fraud Against Taxpayers Act, NMSA 1978, §§ 44-9-1 to -14 (2007), breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, constructive discharge, tortious interference with existing contractual relations, civil conspiracy, and, in the alternative, prima facie tort.

Rather than file an answer, LANS filed a motion to dismiss or, alternatively, for summary judgment. The only statement of undisputed material fact that LANS made relevant to this appeal was that LANS and Horne had entered into an agreement to arbitrate, which was attached. LANS argued that the claims were within the scope of the arbitration agreement and that Horne had expressly waived his right to litigate claims within the scope of the agreement.

The district court granted LANS' motion. At the hearing, the district court indicated that, under the holding of *United Technology & Resources, Inc. v. Dar Al*

7

*Islam*, 115 N.M. 1, 4, 846 P.2d 307, 310 (1993), it was Horne's responsibility to move to vacate or correct the award within ninety days. At the conclusion of the hearing the district court noted that Horne's failure to do so "amount[ed] to a waiver of the claims brought forth in this action." The written order actually dismissing the case appears to adopt a slightly different theory, observing that "Horne entered into an arbitration agreement that waived his right to seek judicial relief for the claims set forth in this lawsuit."

## II.     DISCUSSION

Horne argues that the district court erred in granting summary judgment in essentially three ways: (1) by determining his only means of contesting the scope of the arbitration was to move to vacate or correct the award, (2) by concluding that the scope of the arbitration agreement was broad, and (3) by upholding the arbitration when the arbitration agreement was unconscionable. We address each argument in turn.

Because LANS' motion relies on matters outside the complaint, we treat it as a motion for summary judgment. *See* Rule 1-012(B) NMRA. "Summary judgment may be proper when the moving party establishes a prima facie case for summary judgment." *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 43, 148 N.M. 646, 241 P.3d 1086. Because resolution on the merits is favored, a reviewing court

8

"view[s] the facts in a light most favorable to the party opposing the motion and draw[s] all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879. In contrast, "New Mexico also has a 'strong public policy encouraging dispute resolution through arbitration and favoring finality and strictly limited court review of arbitration awards.'" *K.R. Swerdfeger Constr., Inc. v. UNM Bd. of Regents*, 2006-NMCA-117, ¶ 27, 140 N.M. 374, 142 P.3d 962 (quoting *Spaw-Glass Constr. Servs., Inc. v. Vista de Santa Fe, Inc.*, 114 N.M. 557, 558, 844 P.2d 807, 808 (1992)).

**A.      Scope and Waiver**

**1.      Waiver and Section 44-7A-24**

The ability of a district court to review an arbitral award is narrowly limited by statute. NMSA 1978, Sections 44-7A-24 and -25 (2001), set forth the criteria under which a district court may vacate, modify, or correct an award. Motions under these statutes must be made within ninety days of when the movant receives the award. *Id.* Unless a timely motion is made, the district court may not disturb an award. *See United Tech.*, 115 N.M. at 5, 846 P.2d at 311.

At the hearing, the district court indicated that it based its decision on *United Technology*. *United Technology* involved a dispute between a developer and a builder over payment for a construction project. *Id.* at 2, 846 P.2d at 308. Pursuant to the

9

construction contract, the matter was submitted to arbitration. *Id.* The arbitrator awarded the disputed amount to the builder but denied the builder's request for attorney fees. *Id.* Neither party moved to confirm or vacate the award within the ninety-day statutory period. *See id.* at 4, 846 P.2d at 310. Almost one year after the award, the developer applied to the district court for confirmation. *See id.* at 2, 846 P.2d at 308. During the presentment hearing, the builder attempted to raise the issue of attorney fees. *See id.* The district court confirmed the award, and our Supreme Court affirmed, noting that only a timely motion to vacate, modify, or correct the award would have allowed the district court to review the arbitrator's decision not to grant the fees. *See id.* at 5, 846 P.2d at 311. In reaching its decision, the Supreme Court applied a rule from other jurisdictions that have adopted the Uniform Arbitration Act that a party to arbitration who did not assert a substantive defense within the statutory period was barred from later asserting it. *Id.*

The instant case is distinguishable from *United Technology*. The district court remarked at the hearing that it was persuaded by *United Technology* that Horne's failure to move to vacate or correct the award within the statutory period operated as a waiver. However, unlike the claims in this case, the claim for attorney fees in *United Technology* was actually decided by the arbitrator. Here, LANS has not

10

shown—or even attempted to demonstrate—that the arbitrator actually ruled on the scope of the arbitration or on the claims Horne now pursues.

To the extent that the district court's ruling was based on Horne's failure to move to vacate the award, it was in error. Because LANS has not produced evidence that the arbitrator had previously ruled on the scope or the claims, LANS has not made a prima facie case that it was entitled to summary judgment on these grounds. We do not believe that Section 44-7A-24 bestows finality upon matters that were not decided by the arbitrator. Instead, whether a participant is barred from pursuing claims he could have pursued (but did not) at arbitration is a question of claim preclusion, a defense that is not yet at issue in this case. Accordingly, summary judgment was not appropriate on these grounds based on the limited facts presented.

**2.      Scope of the Arbitration Agreement**

In awarding summary judgment to LANS, the district court concluded that Horne had "waived his right to seek judicial relief for the claims set forth in this lawsuit." Implicit in this conclusion is that the claims in this lawsuit were within the scope of the arbitration. The district court thus appears to have agreed with LANS that the scope of the arbitration was broad enough to encompass the claims in this suit. We address this issue because it appears that the arbitrator did not make any explicit

11

findings related to the scope of the agreement. To the extent the decision addresses the issue of scope, it treats it as a narrow matter limited to the propriety of discipline.

Paragraph four of the arbitration agreement provides that "[t]he hearing officer will have exclusive authority to resolve disputes relating to . . . applicability of this Agreement." Accordingly, even if the arbitrator did not address the scope of the arbitration, the question of scope was still for the arbitrator to decide. However, the parties chose to invoke the district court's authority to resolve the question, and have therefore waived arbitration. *See Wood v. Millers Nat'l Ins. Co.*, 96 N.M. 525, 527-28, 632 P.2d 1163, 1165-66 (1981) (holding that the right to arbitrate is waived when a "party seeking to compel arbitration invokes the court's discretionary power, prior to demanding arbitration, on a question other than its demand for arbitration"). Thus, to the extent that the arbitrator did not rule on the scope of the arbitration agreement or the claims at issue here, it was properly before the district court.

We review the district court's interpretation of the scope of the arbitration agreement de novo. *See Campos v. Homes by Joe Boyden, L.L.C.*, 2006-NMCA-086, ¶ 7, 140 N.M. 122, 140 P.3d 543. "Interpretation of broad arbitration provisions requires the court to focus on the subject matter of the underlying agreement and the subject matter of the dispute." *Id.* ¶ 9. "[T]he subject matter of the underlying

12

agreement determines the scope of the arbitration provision." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 56, 131 N.M. 772, 42 P.3d 1221.

The issue arises most frequently in motions to compel arbitration. In *Santa Fe Technologies*, two corporations, Argus and Santa Fe Technologies (SFT), entered into a contract for a possible merger in preparation to bid on a federal project. *Id.* ¶ 4. The contract contained a clause requiring arbitration of "any breach, default, dispute, controversy, or claim arising out of or relating to this Agreement." *Id.* ¶ 5 (internal quotation marks omitted). Argus eventually decided it would prefer to work with a different partner and terminated its deal with SFT. *Id.* ¶ 9. Argus purchased a third company and won the bid for the federal project with that company. *Id.* ¶ 10. SFT sued, alleging tortious interference with a contract and usurpation of a business opportunity. *Id.* ¶ 11. Argus moved to compel arbitration, but the district court refused, and we affirmed noting that "[o]ur case law requires a closer connection between the subject matter of the agreement and the subject matter of the dispute." *Id.* ¶ 56. Although the arbitration clause was broad, it was still limited by the scope of the contract. *See id.* ¶¶ 55-57. Since the contract discussed methods of closing the potential merger and did not discuss the bid on the federal project, the arbitration clause did not apply. *Id.* ¶ 55.

In *Campos*, this Court again looked to the underlying subject matter to determine the scope of the agreement. Buyers had purchased a house, allegedly based on false representations of seller that adjacent land would not be developed. *See Campos*, 2006-NMCA-086, ¶ 2. As part of the purchase, buyers were enrolled in a home warranty program. *Id.* ¶ 3. The program had a broad arbitration clause that, among other things, required arbitration of claims of negligent or intentional misrepresentation. *Id.* ¶ 4. When buyers sued, sellers moved to compel arbitration. *See id.* ¶ 2. The district court denied the motion to compel arbitration. *Id.* We affirmed, holding that the arbitration clause was directed to the subject matter of the warranty in which it was contained. *See id.* ¶¶ 2, 10. Since the warranty addressed structural defects, not the condition of adjoining land, the claim about misrepresentation of the adjoining land during the sale was not required to be arbitrated. *See id.* ¶ 13.

Following *Santa Fe Technologies* and *Campos*, we examine the subject matter of the agreement to determine the scope of the arbitration. The agreement was limited to the resolution of "all matters raised in the complaint." The complaint was attached to the agreement. We discern the following subject matter in the complaint. The complaint explicitly refers to "[r]etaliation for using AM 111 or any other policy that protects employees from retaliation, including AM 101, AM 711, AM 729, AM 730,

14

and AM 731." An attachment the complaint, also mentions hostile work environment and Horne's difficulty in continuing on in his chosen career as an Experimentalist, singling out the behavior of Nanos and Jones. In contrast, as quoted above, the demand for arbitration only referenced the propriety of the employee discipline imposed and the matter of retaliation "for having utilized the IG's whistleblower hotline[.]"

LANS made no showing as to the actual scope of the arbitration beyond the administrative complaint. LANS' theory clearly is one of claim preclusion; that is, having submitted to arbitration any portion of his employment claims Horne is precluded from asserting any other claims in any other forum. That may be the end result of the inquiry. But the matter cannot be determined on the agreement and administrative complaint alone, and not in the face of (1) Horne's assertions that he tried to expand the scope and was not allowed to after LANS objected, (2) the language of the demand for arbitration, (3) the lack of any finding by the arbitrator as to scope, and (4) the lack of any reference to retaliation in the arbitrator's decision. This last factor lends credence to Horne's assertion that he withdrew his retaliation claim and was allowed to do so by LANS and the arbitrator.

In sum, LANS failed to make a prima facie case entitling it to summary judgment. We will not sort out the issue of scope on the limited record available to

us.  On remand it might be of some value to provide the district court some access to the actual proceedings before the arbitrator.

**B.     Unconscionability**

Horne's remaining argument is that the district court erred in failing to find the agreement to arbitrate unconscionable. Specifically, he contends that it was unconscionable for him to have to choose between arbitration and filing a lawsuit before he had access to relevant documents possessed by LANS. He claims that "LANS successfully manipulated [him] into making an election of remedies, [which] significantly limit[ed] LANS['] legal liability." Horne acknowledges that arbitration "in the abstract" is neither procedurally nor substantively unconscionable.

As Horne has not related the facts of his case to the tests for procedural or substantive unconscionability, we must attempt to parse his argument ourselves. We generally agree with LANS that Horne appears to make two arguments. First, we understand Horne to argue that the agreement was procedurally unconscionable because LANS did not provide Horne with discovery until after Horne chose between arbitration and litigation. Second, we understand Horne to argue that the arbitration agreement itself was substantively unconscionable, although we can identify no particular basis for this claim.

At the outset, we note that it is not at all clear that Horne can complain of unconscionability more than ninety days after entry of the arbitration award. The argument that an agreement to arbitrate is unconscionable is essentially the argument

17

that there was no agreement to arbitrate. Section 44-7A-24 provides that an award may be vacated if there was no agreement to arbitrate. Section 44-7A-24(a)(5). In *Alexander v. Calton & Assocs., Inc.*, 2005-NMCA-034, ¶ 15, 137 N.M. 293, 110 P.3d 509, we noted that under Section 44-7A-24, "a party may continue to argue that there is no agreement to arbitrate even after the arbitration is completed, so long as he preserves his objections before the hearing begins." This dicta from *Alexander* strongly suggests that Horne's unconscionability argument should fail both for lack of preservation and because he did not attempt to vacate the ruling within ninety days.

We nevertheless briefly address the merits. A contract to arbitrate is unenforceable if it is found to be unconscionable. *See, e.g.*, *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 34, 146 N.M. 256, 208 P.3d 901. A contract may be substantively unconscionable or procedurally unconscionable. *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215. Substantive unconscionability refers to the legality and fairness of the contract terms themselves, focusing on whether the terms "are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Cordova*, 2009-NMSC-021, ¶ 22. Procedural unconscionability deals with the "factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which

18

either party felt free to accept or decline terms demanded by the other." *Id.* ¶ 23. We review whether a contract is unconscionable as a matter of law. *Id.* ¶ 11.

The arbitration agreement in this case is not substantively unconscionable. In *Cordova*, our Supreme Court concluded that the arbitration agreement was unconscionable because it was "unfairly and unreasonably one-sided" and reserved the right to litigate exclusively for one side while forcing the other side to arbitrate. *Id.* ¶¶ 26-27, 32. Unlike the agreement in *Cordova*, the agreement here does not favor one side over another. Horne was allowed to choose between arbitration and litigation. The arbitration agreement that he agreed to treats each side equally. Horne wrote the complaint that defines the scope of the arbitration. Furthermore, unlike *Fiser*, where the arbitration agreement was held to be substantively unconscionable for violating public policy, 2008-NMSC-046, ¶ 21, no public policy has been violated here. We find nothing in the circumstances of this case to suggest that the agreement to arbitrate here was anything but fair.

In addition, the circumstances surrounding the formation of the arbitration agreement were not procedurally unconscionable. Procedural inequality exists where the inequality in bargaining power is so exaggerated as to render one party's choice essentially nonexistent. *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985), *overruled on other grounds by Cordova*, 2009-NMSC-021, ¶ 31.

19

Horne acknowledges that he had the choice of arbitration, litigation, or using a "single manager decision maker."  Horne has not shown that bargaining power was so unequal as to preclude him from choosing litigation.  Nor has he made any argument directed to relative bargaining strength, sophistication of the parties, or his freedom to choose litigation.  Horne's primary argument is that, at the time he elected arbitration, he did not have access to the information he later obtained through discovery, and therefore could not intelligently formulate a complaint.  But we have routinely enforced arbitration agreements entered into not only before discovery was available, but before a conflict ever arose.  *See, e.g.*, *United Tech.*,  115 N.M. at 2, 5, 846 P.2d at 308, 311.  Furthermore, had Horne chosen litigation, he would not have had access to discovery until after he filed his complaint.  *See* Rule 1-026(A) NMRA ("*Parties* may obtain discovery . . . ." (emphasis added)).  As in any litigation, Horne was aware of the facts from his own experience, which were sufficient to allow him to initiate proceedings that would entitle him to obtain additional evidence.

To the extent that Horne argues that the agreement was procedurally unconscionable because LANS prepared the demand for arbitration that initiated the arbitration, we disagree.  Horne signed the demand for arbitration over a month after he signed the agreement to arbitrate.  Horne was free to attempt to modify the form before signing it.  Most importantly, however, Horne had already agreed that the

arbitrator would decide the scope of the agreement to arbitrate. Accordingly, Horne had an avenue in which to raise any arguments that the scope was broader than the demand that he filed. As we have noted, Horne appears to have done so, although the statements he has made are perhaps contradictory on this point.

**III.    CONCLUSION**

For the foregoing reasons, we reverse the order granting summary judgment and remand for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**LINDA M. VANZI, Judge**